112 So.2d 796

**Percy Lee MADDEN**

v.

**STATE.**

**8 Div. 407.**

Court of Appeals of Alabama.

March 24, 1959.

Rehearing Denied April 21, 1959.

John Patterson, Atty. Gen., and Jas. W. Webb, Asst. Atty. Gen., for the State.

HARWOOD, Presiding Judge.

Percy Lee Madden was indicted for the first-degree murder of Nelson Johnson.

He has been adjudged guilty of manslaughter in the first degree, and upon his motion for a new trial being overruled, an appeal was perfected to this court.

On the night of 11 October 1957 a crap game was in progress in the home of Harold Warren, in Colbert County, with a goodly number of players. The deceased arrived at the game accompanied by Alberta Moseley and James Bankston, this trio having been together for some time, driving around in Johnson's automobile.

Howell T. Heflin, Tuscumbia, for appellant.

It appears that the appellant began "fading" the deceased in the crap game, and after losing about $20 he decided he had had enough, and refused to "fade" further. This considerably irritated the deceased, and although other players offered to fade deceased, he insisted upon the appellant continuing to be his sole opponent.

This situation developed into a considerable argument between the appellant and the deceased with threats and obscene exchanges, mostly on the part of the deceased.

Harold Warren, the host, secured a shotgun, "took up the blanket," and ordered all of the "guests," variously stated as being from twelve to eighteen, out of his house.

Before actually leaving the house the appellant offered to "shake it off" with the deceased, and to buy him a drink.

These olive branches proffered by the appellant were refused by deceased with renewed threats and obscenities.

The group of guests left Warren's house and went into his yard where several automobiles were parked. At this point the conflict between the witnesses for the State, and those for the defense became grossly irreconcilable.

James Bankston, and Alberta Moseley, as witnesses for the State, testified that they entered the deceased's automobile, the deceased occupying the driver's seat, Alberta being in the middle, and Bankston sitting on the right side.

The State's evidence further tends to show that the deceased had started the engine of his car when John Edward Smith, standing about five feet or less away, asked deceased why he did not beat him (Smith) up, as he had stated he would do, and was he leaving because he was scared. The deceased replied he wanted no trouble.

At this time Alberta noticed the appellant standing immediately behind John Edward Smith with a pistol in his hand. She urged Bankston to open the right-hand door and get out. This Bankston proceeded to do, but not with speed suitable to Alberta, so she gave Bankston a shove which sent him onto the ground, with Alberta following.

These witnesses heard the first shots while on the ground.

The deceased received several wounds. The main one entered his back, ranged downward and emerged in the front abdomen about two inches to the right of, and below the navel.

Two or more bullet holes were found in the right front door, none in the left front door next to the driver's seat.

Bankston testified that during the shooting, or immediately following the shooting, deceased's automobile began to move forward, and the deceased fell out of the left front door. He chased the car, and returned it to its original position.

Alberta testified that during the shooting she got up from where she had fallen, ran around the front of the car and grappled with appellant for possession of the pistol. The gun was fired by appellant once during this struggle. He knocked her down, hit her with the pistol, and then went to where the deceased lay and struck him on the head with the pistol. Alberta did not know whether the car moved off or not during or after the shooting, as she was too engaged in her scuffle with the appellant.

The evidence presented by the defense witnesses including the testimony of the appellant, tended to show after the deceased had declined the appellant's peace overtures the deceased continued his threats and obscenities toward the appellant in the yard. Finally the deceased expanded his threats to include all present, stating he had something in his car "to take care of all of you ———s." At this declaration the deceased ran to his car, flung open the door and was reaching inside when the appellant, standing some 20 feet away, opened fire.

According to the defense evidence, neither the deceased, Bankston, nor Alberta were in the car at the time of the shooting,

nor did Alberta engage in any struggle with the appellant, nor did the car move after the shooting, nor did appellant approach deceased after shooting him.

Following the shooting the appellant drove into Tuscumbia and surrendered himself to the Sheriff of Colbert County.

After the defense had rested the State called John Edward Smith as a rebuttal witness.

On his direct examination the testimony of this witness was evasive, and equivocal. He testified that at the time of the shooting he was not exactly sure where deceased was, he thought he was in the yard, but he didn't know, as he was a good way from the car; he didn't know whether the motor of deceased's car was running at the time the shots were fired, but it seemed to him in a way it was because the car moved backwards after the shooting.

On cross-examination this witness testified that he wasn't certain whether the car moved backward or forward.

He was then asked if he went to deceased's car and asked deceased if he was leaving because he was scared.

The court sustained the State's objection to this question.

He was asked if he heard the deceased down about the car make the statement that he "had something in his car for all you ———s."

The State's objection was sustained to this question.

■ The grounds of the State's objections to these questions were that it sought evidence not in rebuttal to matters brought out by the State on direct examination of the witness.

It is to be noted that both questions sought to elicit evidence already well within the issues of the case from previous evidence.

The testimony of John Edward Smith could more properly have been presented during the State's evidence in chief. However, it is within the discretion of the trial court to permit evidence in rebuttal which should have been offered as part of the case in chief. Blackwell v. State, 264 Ala. 553, 88 So.2d 347; Kelley v. State, 32 Ala. App. 408, 26 So.2d 633.

Where a court exercises its discretion and permits a witness to testify in rebuttal, and testify as to matters presented in chief, then the general rules of trial procedure should apply. Cf. Burns v. State, 226 Ala. 117, 145 So. 436. The right of cross-examination is inherent in such procedure.

"The right of cross-examination thorough and sifting, belongs to every party as to witnesses called against him." Section 443, Title 7, Code of Alabama 1940.

Further, the "right to be * * * confronted by the witnesses against him," guaranteed by Article 1, Section 6, of our Constitution of 1901, includes the right of cross-examination. Tate v. State, 86 Ala. 33, 5 So. 575; Wray v. State, 154 Ala. 36, 45 So. 697, 15 L.R.A.,N.S., 493.

It is the clear right of the cross-examining party to elicit facts which weaken or qualify the case of the party examining in chief, or support the case of the cross-examining party. One of its chief functions is to test the credibility of the deposing witness. 1 Thompson on Trials, 2nd Ed., Sec. 348.

In Alabama, the so-called English Rule of cross-examination prevails, that is, the cross-examination is not limited to matters brought out on direct examination of a witness, but extends to all matters within the issues of the case. Streit v. Wilkerson, 186 Ala. 88, 65 So. 164; Moulton v. State, 88 Ala. 116, 6 So. 758, 6 L.R.A. 301; Fralick v. Presley, 29 Ala. 457.

In the brief filed by the Attorney General it is asserted, as to the sustension of the objections above alluded to, that: "The questions of the defense were not limited to any certain time and place, and the State urges that if for no other reason the objections were properly sustained."

This argument ignores the fact that the State had established the time and place by its direct examination. Certainly we know of no rule requiring a predicate for cross-examination as to facts constituting the res gestae of the offense charged, where as here witness alleges he was present at its commission.

The Attorney General further argues that the case of Brantley v. State, 11 Ala.App. 144, 65 So. 678, 681, supports the ruling of the court below as to its aforementioned sustensions.

In the Brantley case the court pointed out that the questions to which objections were sustained on cross-examination "sought to elicit entirely new matter, and to introduce new issues," and were properly sustained. In the present case the questions to which the objections were sustained sought to elicit evidence firmly within the issues. The doctrine of the Brantley case, supra, is therefore entirely inapplicable.

We are clear to the conclusion that the lower court erred in sustaining the objections to the questions above set forth.

■■ In the event of another trial we wish to note that the court correctly sustained the State's objections to questions which sought to show the results of an out of court experiment conducted by the defense. This point is the subject of considerable discussion in appellant's brief.

In this connection counsel for defense, in the presence of a deputy sheriff, had placed a man of substantially the same size as deceased in the deceased's automobile, and had measured the distance from the ground to the man's navel, an exit bullet wound being two inches below deceased's navel. Counsel argues that such experimental evidence would show that the deceased could not have been sitting in the car at the time he was shot.

Out of court experiments are admissible where there is a substantial similarity between the essential conditions of the exper-iment and of the occurrence, and much is left to the discretion of the trial court in determining these similarities. Neelley v. State, 261 Ala. 290, 74 So.2d 436.

One of the essential elements of the occurrence in the present case so far as the location of the wounds of the deceased are concerned was his position at the time of receiving the wounds.

While there is evidence to the effect that the deceased was seated in his automobile at the time the appellant was first observed with a pistol in his hand, there is no evidence tending to show his position at the time he was struck by the bullets. Without this most essential fact, no substantial similarity can be said to have existed between the occurrence and the basis of the out of court experiment. Such lack is highlighted when considered in connection with the scramble of Alberta Moseley and James Bankston to leave deceased's car when the pistol was seen in the hands of the appellant. We doubt it could be reasonably inferred that the deceased sat immobile at this time.

Reversed and remanded.