308 So.2d 729

Tony BROWDER

v.

STATE.

6 Div. 729.

Court of Criminal Appeals of Alabama.

Nov. 26, 1974.

Rehearing Denied Dec. 17, 1974.

Timothy L. Dillard, Birmingham, for appellant.

William J. Baxley, Atty. Gen., Montgomery, and Quentin Q. Brown, Jr., Asst. Atty. Gen., Birmingham, for appellee.

TYSON, Judge.

The indictment by the Grand Jury of Jefferson County, Alabama, charged the appellant with the robbery of one Joe Moncella Lenon. The jury's verdict found appellant guilty as charged and fixed punishment at fifty years imprisonment in the penitentiary. The trial court then entered judgment setting sentence in accordance with this verdict.

Joe Moncella Lenon testified that he owned and operated the Montevallo Supermarket at 1924 Montevallo Road, Jefferson County, Alabama, on April 13, 1973. He stated that he had opened the store early that morning and sometime between 5:30 and 6:00 P.M., one man came into his store, stayed about five minutes, bought a "honeybun", and then left. Within five or six minutes thereafter, two black males entered the store when one Michael Littleton pointed a rifle at him, and the other party, the appellant, Tony Browder was directed by Littleton to reach into the cash register and get the proceeds. Lenon stated that just before the rifle was pointed at him, the appellant asked for a package of doublemint gum. As he was reaching for the gum, Littleton came in and pointed the rifle and said, "hand it over". Lenon stated he asked the question "What is going on" and Littleton replied, "Aw, man hush and get the money"; that the appellant then reached in the cash register and retrieved the proceeds. He stated that Littleton then directed him to hand over his billfold, which he did, and then asked for any gun which he might have; that he told the two men he had been robbed the previous Monday and did not have a gun. Lenon further stated that the appellant then opened a metal box, which contained some receipts, and that the two men then backed out of the store with Littleton continuing to hold the rifle; that he saw the two of them jump into the rear of a white Cadillac convertible, and hurriedly drive away. He stated there were a total of three men involved, including the driver; that the two men who came into the store had taken slightly over twenty dollars in United States currency. He further stated that one of the bills had been torn and had a piece of tape on it.

Lenon further stated that he saw a lady named Iris McFarland up the street standing in front of her parents' house as the car drove away. Lenon positively identified the appellant in court as being one of

the two men who came into his store on the date in question.

Iris McFarland testified that she lived at 1832—14th Avenue, North, in Birmingham. She testified that she was at her mother's home on the late afternoon of April 13, 1973, at Nassau Avenue near Montevallo Road, when she saw a white Cadillac convertible stopped. She described the car as having a "lady bird or something on the front end of the hood." She testified that she knew Mr. Joe Moncella Lenon who operated the supermarket down the street from her mother's home. She testified that she saw two black males get out of the Cadillac and go into the store, and a few minutes thereafter come running out and jump in the back end of the car into the rear seat. A third man hurriedly drove away. She stated that the two who jumped into the rear of the car were Michael Littleton and Tony Browder.

On cross-examination, she testified that she was not shown any photographs of the two men, but immediately recognized them on the first occasion she testified in court, and now at the trial.

William G. Odom testified that he was working in K-9 Division of the Birmingham Police Department on April 13, 1973. He testified that he had received a police report over his radio pertaining to a robbery of a supermarket earlier that day; that a white Cadillac convertible with some type of "decorative bird" on the hood was wanted; that it had been occupied by three black males. He testified that he observed an automobile answering this description in the 1500 block of 5th Avenue in front of the A. G. Gaston Motel. He testified that he notified police headquarters that he was keeping the vehicle under observation, and about fifteen minutes later three men came out of the motel, got in and began driving away. He testified that he began following them and turned on his blue light and siren. He stated that the three occupants sped down an alley, and he saw articles being thrown out of the vehicle. He stated that he sped up his car and turned and headed the white Cadillac off at an angle. He stated that the vehicle then stopped and the driver was the appellant, Tony Browder, who slumped down in the seat near the steering wheel. He directed the appellant and the other two men seated in the back seat to keep their hands up on the seat as he observed a Winchester 30-30 carbine rifle lying in the floorboard directly below where the driver was seated. He then advised all three that they were under arrest, and at that point, another police vehicle drove up in which Sergeant Shuttlesworth and Sergeant Watkins were seated. He stated that his police vehicle was not suited to carry prisoners, so he turned the men over to the other two officers. He stated that the tall, thin man on the rear seat of the Cadillac was Michael Littleton, who was taller than the appellant.

P. G. Shuttlesworth testified that on the evening of April 13, 1973, he was on duty with his partner Sergeant Rhodes. He stated that shortly after 9:00 o'clock on the evening in question, they approached a white Cadillac convertible which had been stopped by Officer Odom; that the appellant was seated in the front seat as the driver; that Michael Littleton and a companion, who was much shorter than the other two men, were seated on the rear seat. He stated that the three men were placed under arrest; that appellant and Littleton were taken by him to police headquarters and charged with robbery.

The appellant testified in his own behalf and stated that he was a ZMT operator for the United States Post Office Department and lived at 3000 Norwood Boulevard in Birmingham. He testified that on the morning of April 13, 1973, he had gone to one Leroy Mayes' apartment, who was a friend of his, and there met with Michael Littleton and James Perry. He stated that they just went riding around and stopped by a pool hall and played some pool that day; that later he asked Perry to take Littleton over to his home to take some food

for Littleton's baby. He stated that later that afternoon he was with Littleton in his Cadillac automobile, and they stopped and parked somewhere near Montevallo Road; that he was not too familiar with the surroundings, but that he got out of the car and went into the store and asked for some pork skins; that a few minutes thereafter, Michael Littleton walked in with a rifle and pointed it at the man behind the counter. He stated that he tried to leave because he was nervous and told Littleton he didn't want anything to do with this. He said that Littleton then exclaimed, "Get out of the way", reached into the cash register and took the money. He further stated that Littleton .then told him, "Get the change out of the cash register". He stated that he told Littleton he didn't want anything to do with this and that he did not take any of the money from the cash register; that he left about the time Littleton did and saw James Perry driving his car and jumped in the rear seat and so did Littleton.

He further testified that he took Littleton by his wife's home, and then went over to see a man named Emmett Hale, who owed him some money. He testified that Hale paid him and then he stopped by his own home and stayed about thirty minutes. He further testified that later Michael Littleton came back over; that he and Perry then went to the Peppermint Lounge in the A. G. Gaston Motel. He testified that they had one drink and then left driving in his white Cadillac which had a swan on the hood. He testified that he was then stopped by the police officer; that he slumped down in the seat and said, "Let me take Mike over to his wife's house so he can give his baby some milk."

On cross-examination, the appellant admitted the Cadillac automobile and the 30–30 carbine rifle belonged to him, but that he had been drinking all day and had not had much sleep. On cross-examination he also admitted that James Perry had gotten out of the vehicle on Montevallo Road and gone over to the store and bought something before he and Littleton went to the store. He thought Perry had bought some potato chips. He denied taking any money from Mr. Lenon· and that the thirty odd dollars in his possession when he was arrested was the money received from Emmett Hale later that evening. He stated that he thought he had thirty-four or thirty-five dollars when he was arrested.

In rebuttal, Birmingham Detective Richard Watkins testified that he investigated the Montevallo Supermarket robbery at 1924 Montevallo Road on the evening of April 13, 1973; that he endeavored to get fingerprints. He testified that later that evening he went to the vicinity of A. G. Gaston's Motel and that upon arrival several officers had stopped a 1965 white Cadillac convertible. Appellant and two other men were being taken into custody as he arrived. He further testified that he patted down the appellant and took forty-five dollars in United States currency from the person of the appellant consisting of one $20 bill, one $10 bill, and fifteen $1 bills; that the monies had been in his custody since that evening.

Joe Moncella Lenon was then recalled and shown certain currency, and in particular one $1 bill. He testified that he recalled this bill as he had taken some bills out and hid them shortly before the appellant and his companion came into his place; that he put four or five $1 bills back into the register and put a piece of tape on one which had a small hole in the right side of the bill on the top. Upon examination of one of the dollar bills shown to him, he testified that this was one which had been removed by appellant from his cash register on the night of April 13, 1973. Mr. Lenon stated that in his opinion, "It is the same bill." The trial court then permitted the following voir dire examination by the appellant:

"Q. This dollar bill you have testified to, Mr. Lenon, can you positively tell this jury, this court, that this is

the dollar bill that was in your cash box?

"MR. BROWN: We object to the form of the question.

"THE COURT: I sustain the objection to the form of the question.

"Q. Can you tell this jury this is the same dollar bill that was in your cash box on April 13, 1973, ten months ago?

"A. It looks like the same.

"Q. It looks like the same one?

"A. That is right.

"Q. But you are not positive?

"MR. BROWN: We object to the form of the question.

"THE COURT: Sustain as to positive.

"Q. You are not certain, are you?

"MR. BROWN: Object to the form of the question.

"THE COURT: Sustain.

"Q. Do you, of your own knowledge, know this is the same dollar bill that was in your cash register on this date and occasion, ten months ago?

"A. The one, I had one in there identical like that. It had the tape on it and had a little hole in it because I taped it good before I put it in there because some more I put aside.

"Q. Like this one but you are not sure this is the same bill?

"MR. BROWN: I object to the form of the question.

"THE COURT: I sustain.

"Q. Are you sure this is the same bill?

"MR. BROWN: I object.

"THE COURT: I sustain. Let me say this, either it is or it isn't. All a witness can do is say it is or it is not or it was exactly like it or something of that nature. Sure and positive part is what I was sustaining an objection to. Sustain the objection.

"Q. All right, sir. Is this the same bill?

"A. It looks like the same bill.

"Q. It looks like the same bill?

"A. That is right.

"Q. But you can't say that it is the same bill, can you?

"A. I can't say it is the same bill. It looks like it.

"MR. ROGERS: We object to it.

"THE COURT: Overrule.

"Q. Did you—

"THE COURT: Wait a minute, I overruled. He offered it into evidence. She has to mark it in evidence now.

"(Thereupon, the said one dollar bill was received in evidence and re-marked by the court reporter as, "State's Exhibit 1–A.)"

\*    \*    \*    \*    \*    \*

"Q. Can you recall any other one dollar bills in your possession specifically other than the one you testified to?

"A. No, the only reason I could say that one was, because the tape was on it and the little holes in there. I couldn't just say the dollar bills look alike.

"Q. You didn't keep serial numbers on them?

"A. I didn't keep serial numbers.

"Q. In fact, you don't know how much money was taken, do you?

"A. I don't know how much money was taken.

"Q. You don't know how much money you had in your cash box, do you?

"A. I don't know how much was in it.

"MR. ROGERS: That is all, Judge.

"THE COURT: All right, thank you. You can go back out now. You can go back to the witness room.

"(WITNESS EXCUSED)

"MR. BROWN: Judge, I want to offer into evidence the remainder of State's Exhibit 1, what is marked for identification as State's Exhibit 1.

"THE COURT: All right, it is admitted."

### I.

The appellant in his brief contends:

"The record transcript does not contain a complete record of the proceedings before the Trial Court of the questions propounded to the jury venire, the opening and closing arguments by both the prosecutor and the defense attorneys."

With reference to the issue of the questions propounded to the jury venire in the instant case, an examination of the transcript, R. pp. 12–15, shows that there were no objections nor exceptions reserved to any of the questions as so propounded to the prospective jurors. It is clear that in a criminal proceeding the court reporter is not required to transcribe the qualification of the petit jury, Title 15, § 380, Code of Alabama 1940. Where as here, there is no objection or exception taken as to any questions as propounded, then no ruling is presented for review. Hardley v. State, 202 Ala. 24, 79 So. 362, and cases therein cited.

With reference to the closing argument of the attorneys, R. pp. 119–120, there was only one objection, R. p. 120, which is as follows:

"MR. ROGERS: I object to that, Your Honor. There is no testimony he reached under the seat for a gun.

"THE COURT: Overrule. He can draw his inferences."

There is no duty under the law to transcribe the entire argument of counsel. Title 13, § 262, Code of Alabama 1940. It is only where there is objection and exception taken to argument that such should be transcribed. McClary v. State, 291 Ala. 481, 282 So.2d 384. As may be seen, the one objection above noted was transcribed, and from the testimony of Officer Odom, who made the arrest of the appellant, such action by the appellant as slumping into the seat of the car at the time of his arrest clearly presents a question for the jury. Therefore, this argument by the state's attorney was proper. Thus, the trial court's ruling was correct.

We find no error in the manner in which the transcript of the proceedings below was here presented for appellate review.

### II.

Appellant next asserts that the trial court erred in two respects in the admission of the testimony of Mr. Lenon when recalled to the witness stand.

In the first instance, the appellant asserts as error that Mr. Lenon could not state "positively" that the one dollar bill with tape on it and a hole in it was the one and the same as that which had been removed from his cash register on the evening in question. As may be seen in examining that aspect of Mr. Lenon's testimony, the trial court only sustained an objection to the using of the term "positively." We are of the opinion that this ruling is correct. Dersis v. Dersis, 210 Ala. 308, 98 So. 27.

As may be seen in examining Mr. Lenon's testimony, he was called upon to give his opinion that the dollar bill re-

moved from his cash register was one and the same as that shown to him at trial. Mr. Lenon had testified on direct that in his opinion "It was", without objection by appellant's counsel. We believe that the rule governing this situation to be well stated in the opinion of Mr. Justice Harwood, then Harwood, P. J., in Daniell v. State, 37 Ala.App. 559, 73 So.2d 370, certiorari denied, 261 Ala. 145, 73 So.2d 375, wherein he stated:

"We think the rule investing trial courts with reasonable discretion as to the reception of lay opinion evidence will tend to alleviate some of the problems with which such courts are confronted when their rulings are invoked on this type of evidence. While such rule lacks the perfection of absolute certainty, yet within certain limits the experienced trial judge, and lawyer, will find little difficulty in its application. Certainly the troublesome twilight zone of borderline situations should be greatly illuminated by such a rule."

Thus, we find that no error resulted in the trial court's ruling on the voir dire examination of Mr. Lenon. See also McElroy, Law of Evidence in Alabama, Volume 1, Section 127.01(3).

Appellant next contends that he was denied a full and sifting cross-examination of Mr. Lenon, R. pp. 112–114, pertaining to his identification of the dollar bill in question. As previously noted, the witness answered on direct examination in response to the state's question, R. p. 113, that the bill with tape and a hole in it was one of the bills removed from his cash register. There was no objection or exception by the appellant to this opinion and identification by Mr. Lenon, R. p. 113. Moreover, we have set forth in this opinion the voir dire examination by appellant's counsel of Mr. Lenon and cross-examination, and are of the opinion that the trial court properly sustained the objection to the use of the word "positively" as above noted. Moreover, that the balance of the questioning was largely repetitious; therefore, that the appellant's right of cross-examination was not here unduly restricted. Wright v. State, 49 Ala.App. 539, 274 So.2d 95, and cases therein cited.

### III.

Finally, the appellant contends that the trial court should have charged the trial jury on the lesser included offenses, such as grand larceny or assault and battery.

■ As noted by this court in Chamberlain v. State, 48 Ala.App. 254, 263 So.2d 709, the trial court properly refused such charges since the evidence, if believed, would not support a conviction for larceny on one hand, or assault and battery on the other. Kelly v. State, 235 Ala. 5, 176 So. 807; Reeves v. State, 17 Ala.App. 684, 88 So. 197; Chamberlain v. State, supra.

Thus, where as here seen, if any offense was committed, it was robbery, the court's refusal of the charge of grand larceny was proper. Brooks v. State, 36 Ala.App. 310, 55 So.2d 366.

■ As to the remaining refused charges, we have carefully examined each and find that such were properly refused as being affirmative in nature, incorrect statements of applicable law, argumentative under the evidence and therefore invasive of the province of the jury, or were fully and substantially covered in the trial court's oral charge, or other given charges. Therefore, their refusals were proper. Title 7, § 273, Code of Alabama 1940; Prince v. State, 50 Ala.App. 368, 279 So.2d 539, certiorari denied, 291 Ala. 796, 279 So.2d 549; Chamberlain v. State, 48 Ala. App. 254, 263 So.2d 709.

As required by Title 15, § 389, Code of Alabama 1940, we have searched this record and find no error therein. The judgment of the trial court is due to be and the same is hereby

Affirmed.

All the Judges concur.