324 So.2d 313

**Charles L. SHULER**

v.

**STATE.**

**8 Div. 610.**

Court of Criminal Appeals of Alabama.

Oct. 1, 1975.

Rehearing Denied Oct. 28, 1975.

600

Cook & Palmour, Summerville, Ga., and Jack Livingston, Ronald A. Drummond, Scottsboro, for appellant.

William J. Baxley, Atty. Gen. and Carol Jean Smith, Asst. Atty. Gen., for the State.

CATES, Presiding Judge.

This is an appeal from a conviction of voluntary manslaughter with a concomitant jury fixed sentence of eight years. Code 1940, T. 14, §§ 320 & 322.

I

Appellant Shuler, a resident of Rossville, Georgia, and his wife on Saturday, February 16, 1974, accepted the invitation of her niece, Mrs. Leon Pendergrass, to spend the weekend with the Pendergrasses at their home in Scottsboro. That evening the Pendergrasses and Shulers went to the Moose Lodge.

At the Lodge there was dancing among other diversions. Around midnight as the evening's entertainment drew to a close Mrs. Pendergrass invited Mr. and Mrs. Billy Dawson to drop by her home. The Dawsons accepted, arriving at the Pendergrasses ahead of the Shulers and Pendergrasses.

Some animosity seemed to develop between Messrs. Shuler and Dawson, the latter at one point challenged Shuler to Indian wrestling. In the course of this encounter Shuler was plunged against a louvered glass window; next they moved outdoors and got into a scuffle with the result that Dawson threw Shuler to the ground. The host got the parties back into a semblance of quiet and proceeded to walk with the Dawsons to their car which was parked across the road from the Pendergrass house. We quote from appellant's brief:

"* * * Mr. Pendergrass walked to the car with Mrs. Dawson and said: 'Everthing will be all right'. Mrs. Dawson said they needed to go and

something was said about the driving. (Tr. p. 81). While he was talking to Mrs. Dawson, he heard a gunshot. At first, he did not recognize it as a gunshot until he heard another shot. (Tr. p. 82). He turned and saw Mr. Dawson falling, his knees were on the ground. He did not see Mr. Shuler. He and Mrs. Dawson went straight to Mr. Dawson's body. He stayed there until an ambulance arrived."

Shuler took the stand in his own behalf and testified that he was outdoors and saw Dawson coming toward him fast and that Dawson had something in his hand. There was testimony that Dawson had a pen knife. Shuler fired one shot and it hit the ground. Dawson kept on running. Shuler fired another shot and Dawson fell.

Shuler testified that he was afraid of Dawson and that he fired the two shots because Dawson had had him down on the ground twice. Shuler also testified that he had early in life sustained an injury to his skull with the result that part of the bone in the cranium was missing. Inferably, this made him quite apprehensive of a head injury.

## II

The appellant, in brief, has very carefully outlined the adverse rulings of the trial court in accordance with Rule A, 49 Ala. App. XXI. See also, ARAP Rule 28(a)(7) and Form 23.

■ The first question presented arose out of the question on cross-examination of Leon Pendergrass on which he was asked whether or not he, Pendergrass, was afraid of Dawson. The State's objection to this question was sustained.

Appellant complains that Shuler was trying to establish that Dawson was a dangerous and violent man who inspired fear. This is an inquiry which would have been valid had it been shown that violence and peril were directed toward the defendant, but in this case it went toward a third party without proof of its being directed to

Shuler. See McElroy, Law of Evidence (2d ed.) § 63.01.

Had any hostile acts by Dawson been directed toward Pendergrass in the course of the incident (i. e., the res gestae) within the presence or hearing of Shuler, testimony thereof would have been admissible on the issue of who was the aggressor. Wigmore, Evidence (3d ed.) § 248, cited with approval in *Hoomes v. State,* 34 Ala.App. 121, 37 So.2d 686. The kinship between Pendergrass and Shuler would, in Judge McElroy's view, supra, have been a pertinent factor in determining whether menaces to one were a threat to the other. See *McCormick v. State,* 159 Miss. 610, 132 So. 757.

## III

■ Appellant argues that it was error for the trial court to rule out the exhibition of Shuler's head injury to the jury.

The jury had already heard extensive testimony from Shuler relating to his head injury and it is our view that exhibition of the old injury would have merely been cumulative and in the nature of a bolstering of testimony which the State did not dispute. This view of relevance finds support in *Bryant v. State,* 49 Ala.App. 359, 272 So.2d 286. Accordingly, we see no reversible error in this ruling.

## IV

■ One of the defense witnesses was Glenn Pendergrass, the son of Leon Pendergrass. He had previously given a signed statement to the police. As a defense witness the prosecution began cross-examining him with the apparent purpose of predicating a later contradiction from the officer who took the statement.

Thereafter, the State put this officer on the stand as a rebuttal witness. He testified as to the statement elicited from and signed by Glenn Pendergrass. This partially contradicted what the latter testified to as a defense witness.

Defense counsel sought on cross-examination to bring out whether or not the young man had told the officer that at one

point it looked as though his father, Leon Pendergrass, was going "to get into it" with Dawson also. The State's only ground of objection was that the question was not confined to rebuttal. The motion was sustained. This was erroneous under *Madden v. State,* 40 Ala.App. 271, 112 So. 2d 796(5); *Coward v. McKinney,* 277 Ala. 513, 172 So.2d 538.[1]

In this instance, however, the witness answered the question before the trial judge ruled on the objection and the State made no·motion to strike the answer, or to exclude it from the jury's consideration. Nevertheless, the ruling may have cut off further cross-examination.

## V

At the close of the evidence defense counsel moved (a) that the court reporter be instructed to take shorthand notes of the arguments of counsel or (b) that defendant be allowed to bring in another stenographer for this purpose. The trial judge denied both aspects, seemingly on the belief that Code 1940, T. 13, § 262 prohibited the taking of notes by the reporter of argument.

We conceive this to be a misconception certainly where the defendant offers to use an outside reporter or an electronic recording device.[2] In *Mayer v. City of Chicago,* 404 U.S. 189, 92 S.Ct. 410, 30 L.Ed.2d 372, the emphasis was not *how* a court proceeding is recorded, but its truthfulness.

In Alabama, except as limited to cases for rape and assault to rape, court must be held in public. Const.1901, § 169 says:

"In all prosecutions for rape and assault with intent to ravish, the court may, in its direction, exclude from the court room all persons, except such as may be necessary in the conduct of the trial."

This provision goes with § 6 which guarantees a right to a speedy public trial in *all* criminal prosecutions.

Since what the lawyers were to argue to the jury was in the public domain it follows that anyone who took notes could have them tendered for settlement as a bystander's bill of exceptions or under Code 1958, T. 7, §§ 827(1)–827(5). Hence, we view the ruling below as an abuse of discretion. Moreover, without such a transcript or substitute therefor we are unable to say the error was harmless.

The judgment below is reversed and the cause remanded for new trial.

Reversed and remanded.

All the Judges concur.

TYSON, Judge (concurring).

I concur in the opinion in this cause prepared by our distinguished Presiding Judge.

To me, appellant's counsel's request that he be allowed to bring in, and indeed use, another stenographer, who was in fact present in court for the purpose of transcribing the closing argument, raises the question of a denial of due process of law within the meaning of the Fourteenth Amendment to the United States Constitution.

Without question, Title 13, Section 262, Code of Alabama 1940, does not require the court reporter to take down stenographic notes of the complete closing argument of counsel. *Walker v. State,* 291 Ala. 766, 287 So.2d 923; *Lyons v. State,* 53 Ala.App. 111, 298 So.2d 42.

It is only when there is an objection by counsel to such argument, and the essence of this argument specifically stated and brought to the attention of the trial

---

1. Compare *Hale v. United States,* 435 F.2d 737 at 749, f. n. 18; Federal Rules of Evidence 611(b), scope of cross-examination.

2. We specifically forewent deciding the question presented in *Lyons v. State,* 53 Ala.App. 111, 298 So.2d 42.

court by proper objection, and such overruled, that the court reporter should transcribe same and include in the record on appeal. *McClary v. State*, 291 Ala. 481, 282 So.2d 384; *Browder v. State*, 54 Ala. App. 369, 308 So.2d 729, cert. denied 293 Ala. 746, 308 So.2d 735.

The issue here presented, however, transcends these matters. This constitutes a refusal on the part of the trial court to permit a record to be made by a qualified reporter. There is no contention here, or showing, that such would have interfered with the orderly process of trial, or, indeed, in any way infringe upon the court's right to maintain order within the courtroom. See *Renfroe v. State*, 49 Ala.App. 713, 275 So.2d 692, and authorities therein cited.

■ Here, counsel was merely seeking to have, in an orderly manner, a complete record of the argument made in order to have a basis for asserting his contentions in the trial court. Such refusal, in my judgment, constitutes a denial of the appellant's right to be heard effectively through counsel of his choice. As such, this was a denial of the appellant's day in court within the meaning of the due process clause of the Fourteenth Amendment to the United States Constitution.

I, therefore, join in the reversal and remandment of this cause.

CATES, P. J., and HARRIS, De-CARLO and BOOKOUT, JJ., concur in the above opinion.

BOOKOUT, Judge (concurring specially).

■ In addition to the reasons set out by Judges Cates and Tyson, I concur on the ground that denial of the use of a court reporter, hired by the appellant, denies to appellant and his counsel the use of legal tools deemed necessary to effectively try his case and, if necessary, to perfect an appeal.

While Title 13, Section 262 of the Code does not require the official court reporter to transcribe closing argument, the statute does not prohibit such. Neither is there a statutory prohibition against counsel hiring another court reporter to take stenographic notes of any portion of a trial for the benefit and use of either counsel in the trial of the case.

The procedure in Alabama for objecting to and accurately setting out in the record improper argument and rulings thereon is cumbersome and archaic to say the least. This is a procedure adopted by statute, understood and used in our courts, and this opinion does not change that awkward procedure.

However, our opinion will not allow Section 262, supra, to be applied in such a manner as to *prohibit* counsel the use of a court reporter to aid him in being able to read accurately into the official record the portions of the opposing argument he deems improper. This would give appellate courts a more accurate record to consider than we usually review where error is claimed on rulings relating to improper oral argument.

By denying an attorney the right to hire an independent court reporter to assist him in the trial, the trial court prevents him from representing his client as effectively as he could with such assistance. This in turn denies the appellant the right to effective counsel. It would have, what federal courts oft refer to as a "chilling effect" upon his right to appeal.

While the independent court reporter's transcript would not be a part of the record on appeal, defense counsel could use it effectively in setting out his objections during trial, and in drafting a motion for a new trial, and could indeed attach a copy as an exhibit to such a motion.

Our opinion should not be taken as holding that a trial court does not have a right to exclude persons from the court room

who would be disruptive to the proceedings.

All the Judges concur.

## ON REHEARING

CATES, Presiding Judge.

The State in its application says, in part:

"Appellee respectfully submits that this Honorable Court erred in its opinion of October 1, 1975 in which it held that the trial judge absolutely prohibited the taking of notes by the unofficial qualified court reporter. At page 291 of the transcript the trial judge said:

'MR. LIVINGSTON: Does the motion also include the request that we be permitted to have a qualified reporter take it, outside the Official Court Reporter?

'THE COURT: If you want to do that, I have no objection to it; but if there is any attempt made to include it in the official transcript, then there would be objections.'

"A re-reading of this portion of the record clearly shows that there was no abuse of discretion by the trial judge in the instant case."

The above colloquy between Mr. Livingston and the court is correct as far as it goes. However, immediately after that we find (R. 291):

"MR. LIVINGSTON: Then Your Honor would not consider it?

"THE COURT: I would not allow it to become a part of the proper transcript, because it's not authorized by law.

"MR. LIVINGSTON: Then there would be no need in doing it. We respectfully except to Your Honor's ruling."

If the trial judge in advance announces that he would exclude (as he has power to do under Michie's Code, T. 7, § 827(1a) in the settlement of the trial transcript) then to have brought in an unofficial stenographer would have been futile. Therefore, we consider that the defendant was effectively denied the services of a private reporter, certainly for the purposes of preserving a record on appeal.

Opinion extended.

Application overruled.

All the Judges concur.