[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 525 
Alan Daniels was charged with assault with intent to murder, was convicted, and sentenced to twenty years imprisonment. From that conviction he now prosecutes this appeal as an indigent.
At trial, the State called Carol Hunter who testified that on the evening of November 12, 1974, she was working as an assistant manager of a Ma-Jik Mart on Zeigler Boulevard in Mobile (R. p. 55). She stated that on that occasion the appellant entered the store, pulled a .22 caliber pistol, and pointed it at a fellow employee, Craig Doster (R. pp. 56, 57). She stated that appellant then demanded money from Doster, and, as he reached into his pocket to comply with the demand, appellant shot him in the face (R. p. 58).
She related that appellant then turned to her and demanded all the bills from the cash register. After she handed over the money, she begged the appellant not to shoot and turned her head. Unmindful of her pleas, the assailant shot her in the base of the skull; the projectile passed through her throat and lodged under her chin. She further stated that the appellant leaned over the counter to shoot her again, but instead shot at Doster when he began screaming for help. She stated there was no doubt in her mind about the identity of the person who shot her (R. p. 64).
On cross-examination, the witness testified that she was taken to the hospital and placed in an intensive care unit (R. p. 66). While there and while under medication for pain, she was shown photographs of two suspects by a policeman. She identified the person depicted in one of the photographs as her assailant (R.p. 68).
Furthermore the witness stated that about two weeks later she identified the appellant at a lineup at the police station (R. p. 72).
The State next called Craig Doster who corroborated Carol Hunter's testimony regarding the events at the Ma-Jik Mart (R. pp. 102, 103). He identified the appellant as the person who shot him (R. p. 104) and stated that there was no doubt in his mind about his identity (R. p. 106). Doster also testified that while he was in the hospital he was shown two photographs of suspects by a policeman, but was unable to make an identification at that time (R. p. 111). He later identified the appellant at a lineup at the police station (R. p. 121).
The defense placed eleven witnesses and the appellant on the stand in order to establish an alibi defense. The jury was not convinced by this defense and appellant was found "guilty of assault with intent to murder, as charged in the indictment."
 I
Appellant's first assignment of error concerns the following charge given to the jury by the trial judge in his oral charge (R. pp. 345, 346):
 "It is going to be necessary that I define a number of these requirements and these principles and these words. The wording `beyond a reasonable doubt' has been sometimes described as being a doubt for which you would have as reasonable *Page 526 
men and women after hearing all of the evidence. It has been described as being a substantial and real doubt that you would have in your minds after hearing all of the evidence, either based on the evidence or based on lack of the evidence. The reasonable doubt that you would have that would entitle a defendant to an acquittal would not be a conjectural or possible doubt or a whimsical doubt, but the law says it must be a substantial doubt that you would arrive at either from the evidence or from a lack of evidence. The State is not required to prove the guilt of the Defendant beyond all reasonable doubt but only beyond a reasonable doubt and to a moral certainty. Some judges would explain it this way, if after hearing all the evidence and considering it, deliberation, you have an abiding conviction that the Defendant is guilty, you would believe him guilty beyond a reasonable doubt. (Emphasis supplied)
. . . . .
(R. p. 351)
 "MR. KULAKOWSKI: Judge, I have one small exception. I don't believe it is serious. The Court in the earlier part of its charge stated that the State does not under the burden of proving guilt beyond all reasonable doubt, I believe the Court meant to say the State is not under a burden to prove guilt beyond all doubt and it was just a question mark in my mind about
. . . . .
 "THE COURT: All right, in light of that remark, then, I would state this to the Jury, in reference to the burden on the State proving beyond a reasonable doubt, the law says the State is required to prove the Defendant's guilt beyond a reasonable doubt, not required to prove guilt beyond all reasonable doubt and not required to prove guilt beyond all doubt but only beyond a reasonable doubt and to a moral certainty." (Emphasis supplied)
Appellant contends that the trial court erred in charging the jury that the State is not required to prove a defendant's guilt beyond all reasonable doubt but only beyond a reasonable doubt, and to a moral certainty. We are convinced that the trial judge correctly stated the law as to the State's burden of proof. Breazeale v. State, 51 Ala. App. 320, 285 So.2d 130, cert. denied, 291 Ala. 774, 285 So.2d 134 (1973); Sellers v.State, Ala.Cr.App., 353 So.2d 535 (1977).
 II
The general rule is that a witness may not be impeached by showing "prior criminal acts which terminated in less than a conviction." § 140.01 (8), Gamble, McElroy's Alabama Evidence
(3d Ed., 1977). A witness may be impeached, however, by a showing that he was previously convicted of a crime involving moral turpitude. § 12-21-162 (b), Code of Alabama 1975.
Appellant argues that, since § 15-19-7 of the Alabama Code 1975, expressly states that a determination that an accused is a youthful offender shall not be deemed a conviction of crime, therefore it was error for the trial court to allow the prosecutor to cross-examine the appellant about a possible prior youthful offender conviction. This section is as follows:
 "Effect of determination; records not open to public inspection; exception.
 "(a) No determination made under the provisions of this chapter shall disqualify any youth for public office or public employment, operate as a forfeiture of any right or privilege or make him ineligible to receive any license granted by public authority, and such determination shall not be deemed a conviction of crime; provided, however, that if he is subsequently convicted of crime, the prior adjudication as youthful offender shall be considered.
 "(b) The fingerprints and photographs and other records of a person adjudged a youthful offender shall not be open to public inspection; provided, however, that the court may, in its discretion, permit the inspection of papers or records. (Acts 1971, 3rd Ex.Sess., No. 335, p. 4622, § 6.)" *Page 527 
There is an extensive colloquy concerning the cross-examination of the appellant, particularly at a point where defense counsel asserted that the district attorney was referring to a prior adjudication as a youthful offender. This came out as an assertion of counsel to which the district attorney responded that he was simply making inquiry based upon an official "rap" sheet which described prior convictions. A portion of this discussion, which occurred late in the day and was resumed the following morning, is as follows (R.pp. 310-311):
 "THE COURT: You are saying that the Court allowing the question to be asked whether or not the Defendant had ever been convicted of a crime such as grand larceny or receiving and concealing stolen property is error and you are basing your motion for a mistrial on the allowance of that question to be answered?
 "MR. KULAKOWSKI: The allowance of that question to be answered was the error, may it please the Court. It was a particular date and time —
 "THE COURT: Well, I think he referred to January of 1973.
 "MR. KULAKOWSKI: There is no question of what we're talking about, Judge.
 "THE COURT: Well, I mean I am asking you that question, is that the basis for your motion for mistrial?
"MR. KULAKOWSKI: Yes, sir.
"THE COURT: Deny your motion.
 "MR. KULAKOWSKI: My only response, may it please the Court, and I will rest, is that once the showing was made to the Court —
 "THE COURT: Now, what showing, what are you responding to?
 "MR. KULAKOWSKI: Outside the presence of the jury yesterday there was a showing made that a possible youth offender transaction might be brought up here and I submit to the Court that once —
 "THE COURT: I recognize that and I think Mr. Kulakowski, that has been admitted and accepted by the Court. The fact that the Defendant has fifty or a hundred convictions of youthful offender would have no bearing on the right in the district attorney's office to ask whether or not he has been convicted of a crime involving moral turpitude."
As may be seen and after careful examination of the record, nowhere did defense counsel go forward and make a showing that the inquiry concerning the buying, receiving, or concealing conviction in January, 1973, was in fact that of a youthful offender. This should have been done by calling for testimony in camera by the judge who made such decision, or by a certified copy of the adjudication in Circuit Court and proved through the custodian's testimony. We do not have either of these in the record before us.
Since there was no proper showing concerning this issue, we cannot ascribe error to the ruling of the court below. Crenshawv. Alabama Freight, Inc., 287 Ala. 372, 252 So.2d 33 (1971).
 III
Appellant charges that the trial court also erred in denying his plea of double jeopardy when the evidence established that he had previously been convicted of robbery arising from the same criminal transaction (R. p. 2-5).
A plea of former jeopardy is unavailing unless the offense presently charged is precisely the same in law and on fact as the former one relied on under the plea, and this is true even if both cases are founded on the same facts, but the crimes charged were not the same in law. Racine v. State, 291 Ala. 684, 286 So.2d 896 (1973); Colston v. State, Ala.,350 So.2d 337 (1977); Beckley v. State, Ala.Cr.App., 357 So.2d 1022
(1978).
It is apparent that the law and the facts under which the plea here at issue arose are not precisely the same. The trial court properly overruled the appellant's plea.
 IV
Appellant avers that the conduct of the district attorney was intentionally calculated *Page 528 
to inject passion and prejudice into the proceedings, and thus reversible error. Specifically appellant contends that the following assertions by the district attorney in their cumulative effect prejudiced the jury. From the record (R. pp. 61, 62):
"BY MR. VALESKA:
 "Q. All right; let me show you what has been marked as State's Exhibit 3 and ask you if you can identify this picture for the Lady and Gentlemen of the Jury?
"A. Yes, sir.
"Q. All right; please explain it.
 "MR. KULAKOWSKI: I am going to object to that, may it please the Court until some kind of predicate about who took the pictures and all is introduced.
"THE COURT: Sustained at this point.
"BY MR. VALESKA:
 "Q. All right; let me ask you this, ma'am, there appears to be a scarf laying on the floor here. Is that your scarf?
"A. Yes, sir.
"Q. Is that the scarf that you were wearing that day?
"A. Yes, sir.
"Q. And what is this bag right here?
"A. My handbag.
 "Q. Is that the handbag that you took to work that day?
"A. Yes, sir.
 "Q. All right; what does this picture depict, is this the back of the store?
 "MR. KULAKOWSKI: May it please the Court, I am going to object until these things are offered into evidence . . .
"THE COURT: Sustained.
 "MR. KULAKOWSKI: . . . after some proper predicate has been laid.
"THE COURT: I have sustained your objection.
 "MR. KULAKOWSKI: I don't want to keep objecting. Apparently he is going to keep going into it.
 "THE COURT: You have a right to object to anything you consider improper, Mr. Kulakowski. I have sustained your objection.
"BY MR. VALESKA:
 "Q. Does this picture depict the back of the store at the time in which the shooting of Craig Doster occurred?
"A. Yes, sir, other than this, the blood.
 "MR. KULAKOWSKI: Well, I am going to object to it, may it please the Court.
 "THE COURT: Well, I would want you to make your objections timely at the completion of the question that is being propounded, Mr. Kulakowski. Your objection now at this point has come too late.
 "MR. KULAKOWSKI: Okay; I move to exclude it on the grounds that there has been no proper predicate laid.
"THE COURT: Grant your motion.
. . . . .
(R. p. 338)
 "MR. VALESKA: The purpose that I bring that before you is this, if we wanted revenge in our justice system we would let the family of Craig Doster —
 "MR. KULAKOWSKI: I'm going to object, may it please the Court, as the same grounds I pointed out before, the prejudicial, the inflammatory type of conduct, not concentrating on the issue of guilt or innocence but —
 "THE COURT: I would sustain the objection to that line of argument. Let's go ahead, Mr. Valeska.
 "MR. VALESKA: Your Honor, he went into it about hate and revenge that the victims had in this case —
"THE COURT: I heard his argument. Let's go ahead now.
 "MR. VALESKA: We would let his family try it but we don't —
 "MR. KULAKOWSKI: Your Honor, I am going to object and move for mistrial for going beyond the Court's ruling.
 "THE COURT: That line of argument, I have sustained the objection to, Mr. Valeska. Don't go into it again.
"MR. KULAKOWSKI: And I move for a mistrial.
"THE COURT: Deny your motion."
We note that in the first cited instance the trial judge sustained defense counsel's objections and granted his motion *Page 529 
to exclude. This was proper and was sufficient to cure any potential prejudice engendered by the prosecutor's references.
In the second instance the trial judge again sustained defense counsel's objections and instructed the prosecutor to discontinue his line of argument. From the record, we cannot say that the prosecutor's conduct "was so injurious as to deprive the appellant of a fair trial." Diamond v. State, Ala.Cr.App., 363 So.2d 109 (1978), and cases cited therein.
 V
Next, appellant claims that the trial court abused its discretion in limiting defense counsel's cross-examination of an identification witness. In cross-examining Carol Hunter, defense counsel attempted to question her about the appearance of someone other than the appellant who was present in the courtroom. The trial judge sustained objection to these questions on grounds of irrelevancy (R. pp. 84, 85).
The latitude and extent of cross-examination is a matter within the sound discretion of the trial court. Wright v.State, 49 Ala. App. 539, 274 So.2d 95 (1975), and if the trial court determines that a question, or course of questions, is irrelevant to a material issue in a case, this court will not reverse that determination unless the record reveals a clear abuse of discretion. Cooper v. State, 55 Ala. App. 576,317 So.2d 543 (1975).
No abuse of discretion appears from the trial court's refusal to allow the appellant to continue such repetitious and futile lines of questioning such as would amount to a prejudicial limitation on the right of cross-examination. Browder v. State,54 Ala. App. 369, 308 So.2d 729, cert. denied, 293 Ala. 746,308 So.2d 735 (1974); Colston v. State, 57 Ala. App. 4,325 So.2d 520, cert. denied, 295 Ala. 398, 325 So.2d 531 (1975);Patterson v. State, Ala.Cr.App., 344 So.2d 543, cert. denied, Ala., 344 So.2d 547 (1977); Cary v. State, Ala.Cr.App.,349 So.2d 616, cert. denied, Ala., 349 So.2d 618 (1977).
 VI
Also, appellant argues that it was error for the trial court to deny his motion to produce two pictures which were shown to the victims prior to lineups, purely on the basis that such motion made during trial was untimely.
This court in Juzang v. State, Ala.Cr.App., 348 So.2d 516
(1977), held that it was not error for the trial judge to refuse to permit discovery on the day of the trial based on the rationale that the lateness of the motion would delay the trial.
The facts of the present case do not differ from those inJuzang so as to require a different result. We, therefore, hold that the trial court did not abuse its discretion in denying appellant's motion.
 VII
Finally, appellant claims that the trial judge committed reversible error in refusing to allow a hearing out of the jury's presence to determine whether Carol Hunter's in-court identification was tainted.
The relevant portion of the record, urged by appellant in his brief as error, is as follows (R. pp. 56, 57):
 "Q. All right; now, let me ask you this, do you see that person seated here in the Courtroom today?
"A. Yes, sir.
"Q. All right; look around . . .
 "MR. KULAKOWSKI: Judge, I am going to object to that, if it please the Court, at this time until there is some sort of showing to this Court that there is independent identification by this witness, independent and not suggestion that took place while these people were drugged and sedated when those two pictures were shown to them in violation of Simmons versus United States. I am going to object to any kind of identification in Court until those constitutional requirements are taken care of.
"THE COURT: Overrule your objection for the record." *Page 530 
Nowhere does the record show that appellant made a motion for a hearing outside the jury's presence. Instead it appears to us that appellant merely objected to the witness's in-court identification on the basis of improper predicate.
We note that the witness had previously testified that she identified appellant from photographs and at a lineup under circumstances where it was unlikely that irreparable misidentification would occur. Therefore, it was proper for the trial judge to allow her to identify appellant as the person who had shot her. See Childers v. State, Ala.Cr.App.,339 So.2d 597, cert. denied, Ala., 339 So.2d 601 (1976); Lomax v. State, Ala.Cr.App., 359 So.2d 832, cert. denied, Ala., 359 So.2d 836
(1978), cert. denied, 439 U.S. 969, 99 S.Ct. 461,58 L.Ed.2d 428 (1978).
We have carefully examined this record and find same to be free of error. The judgment is therefore
AFFIRMED.
All the Judges concur.