LEIGH M. CLARK, Retired Circuit Judge.
A jury found appellant guilty of robbery. The court fixed his punishment at imprisonment for twenty-five years and sentenced him accordingly.
The only eyewitness to the robbery was the alleged victim, Elmore Tolbert. Defendant took the stand in his defense, denied any participation in the robbery, and testified that he was elsewhere at the time the victim said the robbery occurred. Several witnesses were called in his behalf who tended to support him as to an alibi.
The victim, a fifty-five-year-old man, testified that on the night of October 5, 1979, about 10:00, he discussed with defendant the prospect of purchasing a table from defendant. The discussion took place while defendant was in the house of a person known as “Lightning.” He said he knew the defendant, a young man, and had bought a table from him before. According to his testimony, he decided not to buy another table from him and thereafter went out of the house, proceeded down nearby South Fourth Street in Opelika and while doing so saw two people running, by whom he was immediately attacked. One of the individuals, who jumped out of some bushes and grabbed him from behind, was the defendant. When the victim swirled around to fight off the defendant, the other individual hit him on the head with what appeared to be a gun. The lick knocked him out for a few seconds; when the victim regained consciousness, the defendant and the other individual were kicking him as he lay on the ground. The defendant grabbed the billfold of the victim, ripping his left rear pocket in the process, and immediately thereafter fled with the other individual from the scene. In the billfold was sixty dollars in currency. He promptly called the police, who took him to the police station where he was interviewed and shown some photographs. He was later taken to the hospital and treated for injuries to his head and chest. According to him the robbery took place soon after 10:00 P.M. Defendant was arrested some time the next day.
The alibi evidence was furnished by a large number of witnesses, including defendant’s wife, mother, grandmother and other relatives, which tended to account for his presence at places other than the scene of the robbery at the time thereof by detailing where he was for a considerable period before and after the time of the robbery.
As an incident to the issue of the identify of defendant as one of the robbers, there developed an issue in connection with whether an arm of defendant was in a cast on the occasion of the robbery. The victim testified that it was. The defendant and supporting witnesses testified that he had recently had a cast on his arm by reason of damage to ligaments thereof but the cast *94 had been taken off and dissolved on October 3.
Irrespective of whatever strength there was in the evidence on behalf of defendant, the fact remains that the victim testified positively that defendant was one of the young men who robbed him. With due regard for the apparent sincerity of some, if not all, of his alibi witnesses, it can be readily understood that in view of all the circumstances, particularly the proximity of the place where the robbery occurred to most of the other places where defendant was the night of the robbery and the brevity of the time taken to commit the robbery, the jury was nevertheless convinced beyond a reasonable doubt that defendant participated in it. Perhaps evidence to the effect that there was no cast on his arm on the night of the robbery furnished some support to his defense, but any weakness in the State’s evidence in this connection can probably be reasonably accounted for on the theory that the victim had probably seen defendant while he was wearing the cast and that he was merely mistaken in testifying that he had it on at the time of the robbery. We do not agree with the contention of appellant that there was insufficient evidence to sustain a conviction.
A major contention of appellant is that the court was in error in refusing the following written charge requested by defendant:
“Under an indictment for robbery, there may be a conviction for assault with intent to rob, for larceny, for attempt to rob, for assault, and for assault and battery.”
Unquestionably, there are times under an indictment for robbery when the jury should be charged as to some of the lesser included offenses. It is equally true that there are other robbery cases in which the jury should not be instructed as to any lesser included offense. The requested charge states correctly the offenses that are lesser included offenses in an indictment charging robbery, but whether a charge as to a lesser included offense should be given is dependent upon whether the evidence in the case, according to any reasonable theory, presents a controversy whether the particular conduct constitutes robbery on the one hand or the lesser included offense on the other. If so, such a charge should be given; if not, it should not be given. Turner v. State, Ala.Cr.App., 356 So.2d 235, cert. denied, 356 So.2d 237 (1978); Carter v. State, Ala.Cr.App., 340 So.2d 94 (1976); Golston v. State, 57 Ala.App. 623, 330 So.2d 446 (1975); Browder v. State, 54 Ala.App. 369, 308 So.2d 729 (1974), cert. denied, 293 Ala. 746, 308 So.2d 735 (1975).
As previously indicated, the only eyewitness testimony as to what occurred at the time of the alleged robbery was furnished by the victim. There was no genuine issue between the parties as to whether he was robbed. The only genuine issue between the parties was whether defendant was one of the robbers. His testimony and the testimony of other witnesses for him presented a jury question as to that issue. It cannot be said from any of the evidence in the case, or from a lack of evidence in the case, that the individuals who attacked the victim did not rob him of his billfold and money. The defendant was not entitled to a charge that would have permitted a verdict finding him guilty of a lesser included offense. The refusal of the charge was not error.
In some respects, the facts as to the alleged crime may be likened to Taylor v. State, 48 Ala.App. 443, 265 So.2d 886 (1972), in which it was held that the trial court was in error in a robbery case in its refusal to submit to the jury issues as to defendant’s guilt of lesser included offenses. The case is distinguishable, however, in that in such case both the appellant and the co-defendant testified and admitted their participation in a physical encounter with a police officer in which the officer’s pistol was taken from the holster and removed from the scene. It appears that a factual question was presented as to whether there had been a larceny without a robbery, an assault with intent to rob but no robbery, an attempt to rob but no robbery, an assault but no robbery, and an assault and battery but no *95 robbery. There was no evidence in the instant case to that effect.
Appellant attempts to strengthen his position by arguing:
“Yet even when faced with only the two simple alternatives [finding the defendant guilty of robbery or finding him not guilty] which the Court provided the jury [by the two forms of verdict given the jury], they deliberated on into the evening of the 25th and then returned to continue deliberating on February 26. The deliberations continued into that second day and finally the verdict of guilty was reached.”
A reading of a part of the transcript as to what was said in open court in dialogue from time to time between the judge and jurors as to their welfare and the likelihood of a verdict could lead one to believe that some of them were inclined to reach some kind of a compromise verdict or a verdict for a less offense than robbery. A consideration of all that was said on said occasions, however, should not lead to that conclusion. Appellant apparently uses the word “alternatives” in reference to its use twice in the following conversation between the trial judge and a juror just before the court excused the jurors for the night to resume deliberations the next morning:
“THE COURT: Did you all have a question?
“A JUROR: The only question is, you know, there is several of them want to know what alternatives we’ve got.
“How long do we have to deliberate if we don’t reach a verdict and, you know, just what the—
“THE COURT: I can’t answer that question, as to how long you have to deliberate.
“The alternatives, of course, are there in the forms of verdicts. Only one of those two can be reached.”
It is clear from a consideration of the entire transcript that the word “alternatives” as used by the juror is referable only to alternatives to the continuance of their deliberations at the time, including whether they would be sent to supper or be allowed to go home and return the next day for deliberations. They already knew they would not be held together for the night. Furthermore, the transcript shows that what was largely troubling the jury was the location of the place of the crime, as to which some were familiar and others not, which is exemplified by the following three questions or statements:
“A JUROR: Is it not — is the map, — is it drawn accurate? Is it not true that the St. Paul Church is on the same side of the street as the other church up there on the right?
“ANOTHER JUROR: If we have reason to believe that the map is incorrect, can we alter it?
“A JUROR: Well, I think the thing that bothers the jury the most, if I may speak, is the fact that we do have some people on the jury that are familiar with the neighborhood and it is only by chance and luck that we, indeed, have that expertise here — ”
Another contention of appellant is that the trial court was in error in permitting the State to cross-examine a witness, who had testified as to the time on the night of the robbery that defendant was with her, as to a statement she made to an officer in which she told him a different time from that which she had testified and in permitting the officer to testify thereafter in impeachment of her as a witness by the self-contradictory statement. Appellant says that the evidence was objectionable “as not relating to the res gestae of the crime.” However, it was admissible to impeach the credibility of the witness “by proving that he [she] has previously made statements that are inconsistent with his [her] present testimony.” Gamble, McEl-roy’s Alabama Evidence, § 155.02(1) (1977).
A final insistence on a reversal is based upon the following occurrence during the closing argument of counsel for the State:
*96 “MR. WILKES: —They leave Nathaniel’s house, say, at 10:30; that places them at Inez’s house around 10:45. He tells Cassandra [defendant’s wife] he had robbed somebody; he’s going to the V.F.W.; he gets down to the Y.F.W., which is about ten or fifteen—
“MR. WILLIAMS: Your Honor, we object to that.
“He never told Cassandra he had robbed somebody.
“MR. WILKES: I’m submitting that it may have happened.
“THE COURT: You may continue. Go ahead.”
The transcript indicates no further reference to the matter just quoted. It appears that the court probably considered the statement of counsel for defendant “I’m submitting that it may have happened,” as a modification of his argument, in recognition of the accuracy of the implication of the statement of defendant’s counsel that the statement of State’s counsel was not supported by any actual evidence. Whether so or not, it seems clear that it was made clear to the jury that whatever State’s counsel had inferred from the evidence was not intended, and almost certainly was not considered by the jury, as a statement of fact by State’s counsel. No injury to defendant could have occurred from the argument as modified by counsel that made it.
We have searched the record for any error prejudicial to the defendant and have found none. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur.