Arthur Lee Briggs was indicted for the first degree murder of Loretta Jackson by shooting her with a pistol. The jury found the appellant guilty of manslaughter in the first degree and fixed punishment at three years imprisonment. The trial court, following a probation hearing, denied probation and set sentence at three years imprisonment in the penitentiary.
Charles Jackson, Jr., stated that he was the brother of the deceased, Loretta Jackson, and identified a photograph of the deceased, indicating she was killed as the result of gunshot wounds on Saturday, January 21, 1978.
On cross-examination Jackson testified that he had gone to 3115-J Caffey Drive in Montgomery and was at his mother's apartment on Saturday morning, January 21, 1978. He stated that his sister, Queenie Jackson, was there, also his mother. He stated they looked out the window and saw his sister, Loretta, as she was struck by a bullet, and saw that the appellant, Arthur Lee Briggs, was firing a pistol from beside their apartment in the direction of Loretta Jackson and one Joseph Smith. Jackson stated that Smith was behind a van truck, that Briggs was firing from beside the apartment toward the truck, and that the bullet struck his sister, Loretta. He stated that he saw Briggs then run and back his car up, and that they put his sister in the car to take her to the hospital. Jackson also stated that, the night before, they had all been at Briggs' apartment and Briggs had stabbed Joe Smith in the head with a knife, and that Smith had told him "he was going to get even." Jackson further stated that, together with Briggs and Willie Springs, they placed his sister, Loretta, in the automobile to take her to the hospital. Jackson stated that the appellant, Briggs, lived in the apartment building adjacent to the one in which his, Jackson's, mother lived.
Dr. Richard Roper stated that he made photographs of the deceased, Loretta Jackson, State's Exhibits 1-4. Dr. Roper stated he examined the body of the deceased and found two gunshot wounds, one in the upper left arm, and the other entered the left chest and lodged "on the right side of the heart near the right lung." He stated that a .25 caliber bullet was removed. This was identified as State's Exhibit 5. He stated that the cause of death was due to massive interior bleeding as the result of a gunshot wound, which penetrated the heart and lung (R. 19).
Charles Jackson, Jr., was recalled to the stand and identified a diagram of the location of the apartment buildings and stated that his sister, Loretta, had gone out to the street and asked Joe Smith to leave when she was struck by bullets fired by the appellant, Arthur Briggs, who was standing beside the apartment building. He stated that his sister fell to the ground, and that Joe Smith was behind the van truck. He stated he later saw Joe Smith fire at Briggs.
Thomas Hopen, Criminalist for the Department of Toxicology at Montgomery, stated he received a copper jacketed .25 caliber bullet, State's Exhibit 5, and compared test rounds fired from State's Exhibit 6, a .25 caliber bullet, and determined that the same had been fired from this .25 caliber pistol and could not have been fired through a .22 caliber revolver, though he subsequently examined a .22 caliber pistol, which reportedly had been used in the incident.
Thomas G. Totty identified State's Exhibit 6 as a .25 caliber pistol, which had been turned over to him by Detective Danny Carmichael. *Page 532 
Terry Briggs testified he was the younger brother of the appellant, Arthur Lee Briggs, and that the appellant had come by his house on Saturday morning, January 21, 1978, and that their brother, Tracy, was there. He stated that his older brother, Arthur Lee Briggs, told him to take the pistol and put it up. He stated he put the pistol upstairs under the dresser, that later, when the police came by, he went upstairs, got it and gave it to a Montgomery police officer. Young Briggs testified he was twelve years of age.
Joseph Smith testified that his wife, Linda Faye Smith, was a sister of the deceased, Loretta Jackson. He testified that, on Saturday, January 21, 1978, he and the appellant, Arthur Lee Briggs, fired pistols at each other at a location on Caffey Drive in Montgomery, Alabama. He stated that the night before Briggs had stabbed him in the head, that he had gone to the hospital and had this fixed, and then went back over the next morning to ask Briggs why he had stabbed him. He stated that, as he got out of his car, his wife's sister, Loretta Jackson, came running out on the street toward him and began pushing him away from the apartment. He stated that Loretta had her baby in her arms, that Briggs started shooting, that he ducked behind the van truck, and that Briggs fired several times before he fired back at him. He stated that Briggs had a small .25 caliber pistol, and that he, Smith, had a .22 caliber pistol with which he returned the fire.
On cross-examination, Smith admitted getting into an argument the night before with his own wife at Briggs' apartment, that Briggs picked up a knife and stabbed him in the head, and that he had to go to the hospital.
Smith further stated that they had been drinking whiskey and beer. He stated that his brother-in-law, Bernard Jackson, had been there on Friday night, along with Loretta Jackson and Arthur Lee Briggs, and his own wife, Linda. He stated that he had fired at Briggs the next day only after Briggs began shooting, and the bullets struck Loretta. He stated that he gave the Montgomery police a statement when they came to see him on Saturday, January 21, 1978, concerning the shooting.
On cross-examination, he admitted firing three or four shots at Arthur Lee Briggs.
Queenie Jackson testified that she was the younger sister of the deceased, Loretta Jackson, and was at her mother's home at 3115 Caffey Drive on Saturday morning, January 21, 1978. She stated that she heard some shots being fired from beside her apartment and looked out the window. She stated she saw Arthur Lee Briggs standing beside her house, firing at Joseph Smith, who was ducking behind a van truck on the street. She stated she saw her sister go outside, and by the time that she, Queenie, could get outside her sister was lying on the ground. She said, "Men, stop shooting," and her brother, Charles Jackson, and Willie Springs helped put Loretta in Briggs' automobile to take her to the hospital.
She stated that she had been at Briggs' apartment the night before, and that Arthur had come into the bedroom where Joe Smith and his wife, Linda, were arguing, and struck Smith, then stabbed him in the head with a knife. She said that when Smith left, Briggs told him "if he ever came back over, he was going to kill him."
Bernard Jackson testified that, on Saturday, January 21, 1978, he was at his mother's apartment on Caffey Drive. He stated that the deceased, Loretta Jackson, was his sister. He said that, together with one Joe Spring, he helped Arthur put Loretta in Arthur's car after she was shot to take her to the hospital. He said that he was inside his mother's apartment and did not see the shooting. When he ran outside he saw Loretta staggering. The baby was lying on the ground, he picked up the baby and took it to his mother's apartment. He then helped put Loretta in the automobile and rode with Arthur and Willie Joe Springs. He stated that Arthur first stopped at his mother's house in Gibbs Village and went inside, taking the pistol with him. He stated that Briggs first asked him to take the pistol inside, that he refused, and that Briggs went inside and came back in a few minutes. *Page 533 
He said that they then drove to Jackson Hospital emergency room where they took Loretta inside.
On cross-examination, he testified that, when he first went outside, the only person he saw shooting was the appellant, Arthur Lee Briggs. He stated that he got in the car to comfort his sister, Loretta, and had later given the police a statement.
Montgomery Detective D.H. Carmichael testified that he recovered a .25 caliber automatic pistol from Terry Briggs, the younger brother of the appellant, which he identified as State's Exhibit 6, and which was admitted in evidence. He stated that he also talked to several witnesses with reference to the shooting and first noticed the appellant when he drove up to Jackson Hospital in a hurried manner. He saw Briggs get out of the car and accompany a black female, who was placed on a stretcher, into the emergency room. He stated he talked with them briefly there, and both Briggs and the brother, Bernard Jackson, became hysterical when told that Loretta Jackson had passed away.
Montgomery Police Detective Sidney Williams stated that he talked with the appellant, Arthur Lee Briggs, on Saturday, January 21, 1978, at Police Headquarters. He stated that before talking with Briggs he gave him a full Miranda warning (R. 78), and without any threat, coercion, intimidation, or inducement, the appellant gave a statement. The Miranda waiver and statement were admitted.
At the close of the State's evidence, the appellant moved to exclude on the ground that the State had not presented a prima facie case of first degree murder, and also moved to exclude the State's evidence on the theory of self-defense, and thirdly, that the entire shooting was an accident. Appellant's motions were overruled.
Willie Davis testified that, on the morning of Saturday, January 21, 1978, he first saw Joe Smith at Washington Park and gave him a ride over toward Caffey Drive, and that he gave him a .22 pistol. Davis stated that he was driving his sister's car at this time.
On cross-examination, he stated he saw Smith run up toward Arthur Lee Briggs' car and tell Briggs that he misused him. He stated that Joe Smith fired the first shot, and that Briggs was running around the car. He stated that he saw Loretta Jackson fall and that she had been pushing Smith across the street. He stated he heard five or six shots fired.
Montgomery Police Detective Leo Blankenship testified he recovered a .22 silver pistol from Willie Davis, who told him he had given this pistol to Joe Smith on January 21, 1978. He stated that Davis told him Briggs had fired first, and that Smith had fired three times, but on examination of the gun, it had five empty shell casings.
Doris Jean Cannon stated she lived near 3115 Caffey Drive with one Willie Joe Springs. She stated she had not been there the night before when Briggs and Joe Smith had gotten into an argument.
Arthur Lee Briggs testified that, on January 20, 1978, he lived at apartment 3115-J, Caffey Drive, and was employed by the Montgomery Sanitation Department. He stated that, on Friday night, Bernard Jackson and Joe Smith had come over, that they had had some beer, and later drank some whiskey. He stated that Joe Smith brought his wife, Linda, over later, and that Queenie Jackson was there. He stated that Loretta Jackson, his wife, heard Linda crying, that they went back there, and that Joe had struck Linda, causing her nose to bleed. He said that Queenie and the others got mad with Joe, and that he told Joe to take his fight somewhere else. He stated that Joe suddenly pushed him and had him by the neck, and that he reached for a knife and stuck him in the head. He said that later he told his wife, Loretta, he had $50.00 he would pay on Joe's hospital bill. He said that later Bernard Jackson came and told him that he should not have stabbed Joe Smith. He stated he told Bernard not to tell him how to run his house. He stated that the following morning he went by to see his mother before she left for work at the Oyster Lounge on the Southern Bypass. *Page 534 
He stated that he and Loretta went back home about 11:00 that morning, and that it was not long after he pulled in the driveway that he saw Joe Smith get out of a van truck and start running toward him. He said that Joe Smith fired first, and that he ducked and ran around the truck, then finally reached inside his car and got a pistol. He said that he fired at Joe Smith three times, and that he was ducking and trying to get out of the way of Smith's fire. He said that he heard Loretta say, `I'm hit" and saw her begin to stagger. He told Joe to stop shooting and they did. They then took Loretta to the hospital. He stated that he went by his mother's and gave his younger brother a pistol on the way to the hospital. He stated that Bernard Jackson and Willie Joe Springs helped him take Loretta to the emergency room at Jackson Hospital. Briggs stated that he had no intention of shooting his wife, Loretta Jackson.
Ocie Mae Briggs stated that her son, Arthur Lee Briggs, had come by her home on the morning of Saturday, January 21, 1978, and brought their children. She said that a little after 9:00 she left to go to work. Mrs. Briggs stated she was not present when her son came over later and brought a pistol and gave it to his younger brother.
 I
The appellant moved to exclude the State's evidence at the conclusion of the State's case, and subsequently, in writing, requested the affirmative charge. Appellant contends the State failed to prove a prima facie case. In Cunningham v. State,47 Ala. App. 730, 261 So.2d 69 (1972), we find the following:
 "In Mount v. State, 32 Ala. App. 235, 24 So.2d 142, we find:
 "`Section 320 of Title 14, Code of Alabama 1940, defines manslaughter as follows: "Manslaughter, by voluntarily depriving a human being of life, is manslaughter in the first degree; and manslaughter committed under any other circumstances is manslaughter in the second degree." Thus manslaughter is not defined, except as to degrees. The section must be read in connection with the common law, which defines manslaughter in the first degree as the unlawful and felonious killing of another, without any malice, express or implied, by voluntarily depriving him of life. Turner v. State, 160 Ala. 55, 49 So. 304.' See also Clarke v. State, 117 Ala. 1, 23 So. 671.
 "Our court in Kizziah v. State, 42 Ala. App. 303, 162 So.2d 889, defined `prima facie evidence' as follows:
 "`Prima facie evidence' means that which brings about a measure of proof which, unless it is self contradictory or is contradicted by the defense, would support the jury's inferring the existence of one or more elements of a crime.'
 "We are of the opinion that the State here properly proved a prima facie case; hence the motion to exclude and affirmative charge were properly denied."
 II
The appellant calls attention to the following statements made in closing argument and asserts that error occurred with reference to the remarks shown (R. 120-121):
 "THE COURT: Ladies and Gentlemen, both sides have rested and at this time, as I explained to you earlier, we will hear closing arguments.
 "(Whereupon, counsel for both parties argued their case to the jury. Whereupon, during closing argument the following occurred:)
 "MR. SMITH: We object to that, Your Honor. A plea of not guilty encompasses a plea of self defense and accident.
 "THE COURT: Move on. I will charge you what the law is.
 "MR. SMITH: Your Honor, we object to that argument. We haven't said anything to Loretta Jackson. It's improper.
"THE COURT: Go ahead.
 "MR. GILLIS: Your Honor, we are going to object to this line of argument being highly improper as to a misstatement of what a curtilage is and all about it.
 "MR. SMITH: I said I think the judge is going to charge you this. *Page 535 
 "THE COURT: I will tell them what the law is. Go ahead and argue.
 "MR. SMITH: We object to that, Your Honor. That is not a correct statement of the law.
"THE COURT: I will charge them on the law, go ahead.
 "(Whereupon, counsel for both parties concluded closing argument.)"
In Browder v. State, 54 Ala. App. 369, 308 So.2d 729, cert. denied, 293 Ala. 746, 308 So.2d 735 (1974), we find:
 "There is no duty under the law to transcribe the entire argument of counsel. Title 13, § 262, Code of Alabama 1940. It is only where there is objection and exception taken to argument that such should be transcribed. McClary v. State, 291 Ala. 481, 282 So.2d 384. . . ." See also Zuck v. State, 57 Ala. App. 15, 325 So.2d 531, cert. denied, 295 Ala. 430, 325 So.2d 539 (1975).
As may be seen above, the objections in question are wholly fragmentary and fail to set forth the full statement made and the objection. In this state of the record, the appellant has failed to properly present the exception taken to the closing argument.
As noted above, Alabama law does not require the court reporter to take down in his stenographic notes the complete closing argument of counsel. Walker v. State, 291 Ala. 766,287 So.2d 923 (1973); Lyons v. State, 53 Ala. App. 111, 298 So.2d 42
(1974).
It is incumbent upon counsel, where he makes objection to the closing argument, to specifically state and present to the attention of the trial court by proper objection such argument and the court's ruling thereon in order that the court reporter be able to transcribe same and include this in the record on appeal. Authorities herein cited. Moreover, where, as here, the appellant is not an indigent, it is incumbent upon counsel, if he desires the complete closing argument transcribed, to bring in a court reporter and have same done, or to pay the reporter for transcribing the complete closing argument. Shuler v.State, 56 Ala. App. 599, 324 So.2d 313, cert. denied, 295 Ala. 418, 324 So.2d 319 (1975).
We cannot ascribe error to the argument herein presented or to the manner in which such alleged error is presented in this record. Cases cited.
 III
At the close of an extensive oral charge, the attorneys for both sides announced, "Satisfied." Later, after the jury had retired and begun their deliberations, the jurors requested additional instructions on malice and the distinction between malice and intent, and further received instructions on manslaughter in the first degree. There was no exception to the instructions on manslaughter in the first degree.
With reference to the instructions on malice and intent, we have carefully reviewed the trial court's oral charge and find that the trial court did correctly charge the jury on these matters, and the principal trial counsel, Mr. Smith, having announced, "Satisfied," it was too late for co-counsel to later make exception when the jury asked for further instructions. Moreover, the trial court gave eleven written requested charges at the request of appellant's counsel. We are of the opinion that the extensive oral charge, and these refused charges, fully and adequately cover the applicable law in the case at bar.
The remaining refused charges were either properly refused under the evidence in this cause, or otherwise fairly and adequately covered by the trial court in its oral charge, or the several written charges given at the request of the appellant. § 12-16-13, Code of Alabama 1975.
We have carefully examined this record and find same to be free of error. The judgment is therefore
AFFIRMED.
All the Judges concur. *Page 536