Appellant was put to trial upon a two-count indictment charging him with assault with intent to rob and assault with intent to murder. Throughout the trial proceedings he was represented by counsel of his choice and at arraignment pleaded not guilty. The jury returned a verdict finding him guilty under both counts of the indictment and the court sentenced him to ten years imprisonment in the penitentiary. After sentence was imposed he gave notice of appeal and trial counsel represents him on appeal.
There was no motion to exclude the State's evidence; there was no motion for a new trial; no exceptions were reserved to the court's oral charge, but there was a written request for the affirmative charge which, of course, was refused.
Mrs. Jill Ann Love, the victim, was working at Handy Foods Store located on 8th Street, S.W., in Decatur, Morgan County, Alabama, on May 20, 1978, when she was stabbed six times by a young white male. She was alone in the store when this man entered the store and began looking around. May 20th was the first time Mrs. Love worked the late night shift. The young man asked Mrs. Love for some thin spaghetti and he was directed to the last aisle in the store. He did not find the kind of spaghetti he wanted and he asked Mrs. Love the price of an item in the frozen foods section. In the meantime another young white male came in the store and talked to the first man a few seconds and left the store. Mrs. Love stated that the first one to enter the store remained twenty-five or thirty minutes just looking around and she kept watching him. He *Page 1111 
was not disguised in any manner and she had a clear view of his face. This young man, later identified as appellant, asked Mrs. Love the price of the french fries. Mrs. Love did not know the price and walked to the frozen foods section where appellant was standing. She opened the top and the first package did not have a price on it. She picked up the second package and told him the amount was $1.15. As she stood up next to appellant he grabbed her and began to stab her. He stabbed her six times, threw her on the floor and went to the cash register and pushed the buttons making a ringing noise. She heard the ringing sound and it appeared to her that he was pushing the buttons trying to get the register open.
Mrs. Love further testified that the exit and entrance doors had bells attached to them and while she lay prostrate and bleeding on the floor she heard these bells ring but did not know if the second young man who talked to appellant a few seconds earlier had returned. After hearing these bells ring the second time Mrs. Love got up from the floor and ran from the store calling a Mrs. Woods next door. Mrs. Woods' grandson came to the aid of Mrs. Love and assisted her to Mrs. Woods' yard. He then called the police and the ambulance. She was taken to the hospital for treatment of the stab wounds and remained in the hospital about two weeks.
Mrs. Love said she saw her assailant's face several times during the period of time he was in the store at close range and at times when they were standing side by side. She made a positive in-court identification of appellant as the person who stabbed her and threw her to the floor.
She did not see her assailant from the date of the attack until 15th of October, 1978, when she saw him at a U-Totem Store on Sandlin Road. She was sitting in a car at the U-Totem Store waiting for her husband who was in the store when appellant got out of a car. She recognized him and got the number on the license tag, and she and her husband drove home and called the police and gave them the tag number.
On cross-examination she testified that she talked to an unidentified officer at the hospital following the attack on her but did not know if he wrote down her statement. Later she talked to Detectives Collier and Crowell. She told them her assailant was wearing a reddish t-shirt and blue jeans. The shirt was short-sleeved. He was not wearing glasses and did not have a beard or mustache. She admitted that at the preliminary hearing she was uncertain about the mustache. She further said he was five feet, six or seven inches tall. At the U-Totem Store in October they pulled in behind the car occupied by appellant, which was a Toyota or Volkswagen stationwagon occupied by three people, appellant, another boy and a girl. She stated appellant went into the store, came out and went to a telephone booth. Prior to the time she saw appellant at the U-Totem Store she had viewed a number of photographs but appellant was not in that photographic array. On October 17, 1978, she viewed a handful of photographs and picked out a photograph of appellant. On redirect examination she testified she did not go back to work after being released from the hospital because she was afraid.
Sergeant Kenneth Collier of the investigative division of the Decatur Police Department testified that he and Sergeant Crowell processed the Handy Food Store after the crime. They made photographs of the store and Sergeant Collier testified as to the accuracy of the scene depicted in these photographs and they were admitted into evidence over the objection of appellant.
Sergeant Robert Clark of the Decatur Police Department was called as a defense witness and testified that he received a telephone call from Mrs. Love on October 15, 1978, in which conversation she gave him the tag number of the car parked at the U-Totem Store. He traced the tag number and found that it was registered in the name of Hubert Allred, appellant's father. Later he called Mrs. Love to the police station and showed her a number of photographs including one of appellant. *Page 1112 
Mrs. Love unhesitatingly and unequivocally identified the photograph of appellant.
On October 17, 1978, Sergeant Clark conducted a lineup consisting of five persons. Mrs. Love, without the slightest hesitation, identified appellant as her assailant. The officer then removed Mrs. Love from the viewing room while the positions of the five people were rearranged. Then Mrs. Love was returned to the viewing room and again identified the appellant.
On cross-examination he identified State's Exhibit 8 which was a photograph of the five persons in the lineup. The photograph was introduced into evidence.
Appellant testified that he was 19 years of age at the time of the trial and would be 20 on May 6, which made him 17 at the time the crime was committed. He had a twelfth grade education and took a GED test after serving a short time in the Marines. At the time the offense allegedly occurred he was employed by Mr. James Guyse putting in central air and heat. He emphatically denied the stabbing. He stated he had been in the store a number of times both before and after Mrs. Love was stabbed. The store was on the route from his home to the place where his mother worked and he often took her to her place of employment. He said he had never seen Mrs. Love before and knew nothing about the stabbing. He stated he did not carry a knife and never had. He had been in and around Decatur from the time of the offense until the trial, but he could not state where he was at the time and place of the stabbing.
From the record:
 "Q. Were you in that store on May 21, 1978, looking for spaghetti and french fries?
 "A. No, sir. I am not saying I wasn't in the store. I could have been over there, because I don't know where I was at, but I know I wasn't in there doing anything wrong."
He further testified that he was presently employed as a caretaker at Johnson's Chapel in the Danville Cemetery taking care of the cemetery and digging graves.
On cross-examination he testified that he had stopped at this store many times as it was just a handy place to stop when he needed to stop there. He was asked when the stabbing took place and replied and responded, "It happened in May; I know that." He admitted he heard all the witnesses testify but he still maintained he didn't stab Mrs. Love. He again said he did not know where he was on May 21, 1978.
Appellant's mother and four other witnesses testified appellant enjoyed a good reputation in the community; that his reputation for truth and veracity was good, and they would believe him on his oath.
Appellant contends that his sole defense was an alibi and the trial court failed to adequately charge the jury on the law of alibi and erred to a reversal in refusing to give his requested charge no. 6. This charge reads as follows:
 "The Court charges the jury that if you are reasonably satisfied from the evidence in this case that the defendant was at some other place and was not at the Handy Food Store, at the time and place testified to by the State's witnesses, then, under the law, it will be your duty to find the defendant not guilty."
The court charged the jury on the law of alibi in the following language:
 "The defendant has among other defenses plead what we know in the law as an alibi. An alibi in effect means that the defendant was not present at the time and place in question, and therefore could not have committed the offense. You look to all the evidence from the case to determine from that evidence whether or not you are satisfied from the evidence beyond a reasonable doubt that he was present at the time and place in question, and whether or not he is the one who participated in the acts of violence which are charged here in this indictment. Use your common sense and judgment, as I stated before."
The above portion of the court's oral charge adequately and sufficiently covered *Page 1113 
the law of alibi. If the jury was uncertain as to what action they should take if they believed appellant's alibi was proven that uncertainty was completely dispelled by given charge no. 5. Given charge no. 5 is as follows:
 "The defendant sets up an alibi in the case, and the burden of proof is not changed when he undertakes to prove it, and, if by reason of the evidence in relation to such alibi, when considered with all other evidence, the jury entertain a reasonable doubt as to defendant's guilt, he should be acquitted, although you may not be able to find that the alibi has been fully proven."
The law is well settled that a refused charge, stating correct principles of law, which is adequately and substantially covered in the court's oral charge or in given charges does not constitute error. Langley v. State, Ala.Cr.App., 381 So.2d 223; Section 12-16-13, Code 1975, and the cases there annotated.
We have repeatedly held that a conflict in alibi testimony and identification testimony is peculiarly within the province of the jury to resolve. Smith v. State, 53 Ala. App. 27,296 So.2d 925; Lindsey v. State, Ala.Cr.App., 331 So.2d 797;Mullins v. State, Ala.Cr.App., 344 So.2d 539. See Ala. Dig., Criminal Law, Key No. 747, for a collection of cases on this proposition of law.
Next appellant contends the trial judge made two remarks that prejudiced his case and this case should be reversed because of these statements. The first of these statements was made at the beginning of the trial and before any evidence was taken. The court stated:
 "We are entering the case of the State of Alabama vs. Tony Glen Allred. This is a charge of assault with intent to rob and assault with intent to murder. Give me your attention, jurors, just one minute please. We will ask that no other jurors remain in the courtroom because of another case that is to be tried that may have something that would interlock it with this case to some extent. You should not be exposed to that."
Because of this statement appellant made an objection and a motion for a mistrial without assigning any grounds. The court overruled the motion for a mistrial. We are not convinced that appellant was prejudiced in any manner, form or fashion. The remark was not addressed to the jury sworn and empanelled to hear this case but to the other prospective jurors present in the courtroom. From the record we cannot say the jury in the present case even heard the statement and if they did, whether they had any idea that appellant was charged with another offense.
In McCovery v. State, Ala.Cr.App., 365 So.2d 358, this court held:
 "Remarks by the trial judge may be open to criticism, but they are not error unless they have affected the result of the trial. (Case omitted). It is not every erroneous expression of opinion by a trial judge, during trial, that will furnish a ground for reversal. To do so it must, in some manner, influence the result of the cause, or be supposed to do so." (cases omitted).
The statement made by the trial judge in this case was harmless and certainly there was no error in denying the motion for a mistrial.
The second statement complained about was made at the close of the court's oral charge to the jury:
 "Ladies and gentlemen, we are going to let you retire to the jury room over on your front right and consider your verdict. Some time later in the afternoon if you do not reach a verdict, then we will let you go to the motel for the night. If you do reach a verdict, of course, we will discharge you until tomorrow. But do not let that affect your judgment one way or the other in the case. Give it full consideration and take such action as you think is proper according to the instructions and the evidence in the case. You can retire now."
Appellant's counsel responded as follows:
 "Judge, I would like to enter an objection. The court said if they didn't reach *Page 1114 
a verdict he was going to send them to the motel for the night."
From the record:
 "The Court: Do you have my full statement about that, about that not affecting their verdict in any way?
"The Reporter: Yes, sir.
"The Court: Overruled."
"Mr. Straub: We except, to that statement."
Appellant contends, in brief, that this "had the effect of coercing the jury to return a speedy verdict or spend the night sequestered." We do not construe the remark of the trial judge as coercive or threatening. He charged them in plain terms not to let that affect their judgment one way or the other but to give the case full consideration according to the instructions of the court and the evidence in this case. McCovery v. State, supra.
Finally, appellant contends the trial court erred in allowing the State to bolster the testimony of the chief prosecuting witness, Mrs. Love. We do not agree.
On cross-examination appellant's astute and resourceful counsel tried by every honorable means known to a trial lawyer to cast doubt on Mrs. Love's identification of appellant as her assailant. On redirect the prosecutor asked Mrs. Love the following question:
 "Is there any doubt in your mind whatsoever that the defendant seated over there at the table is the individual who stabbed you 6 times out there on May 20th, 1978, at the Handy Food Store?"
Counsel for the appellant objected "on the grounds that that is what the jury is to decide." The objection was overruled. The question was not answered but was reframed:
 "Q. Is there any doubt in your mind whatsoever that the defendant seated over here at the table by his attorney, Mr. Straub, is the person who stabbed you 6 times on May 20th, 1978, at the Handy Food Store here in Decatur?"
"A. No, sir, there is no doubt."
There was no objection to the question as reframed. Absent an objection and an adverse ruling nothing is presented to this court for review. Review on appeal applies only to rulings by the trial court. Cooper v. State, Ala.Cr.App., 331 So.2d 752; Ala.Dig. Criminal Law, Key No. 1030 (1).
We have carefully searched the record for errors affecting the substantial rights of appellant and have found none. The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.