[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 169 
On December 17, 1982, the appellant, Freddie Lee Bell, was indicted by the Grand Jury of Mobile County, Alabama, for robbery in the first degree in violation of § 13A-8-41, Code of Alabama 1975. Appellant was subsequently arraigned on February 11, 1983, at which time he entered a plea of not guilty. His jury trial commenced on March 31, 1983, and on April 1, 1983, the jury found him guilty as charged in the indictment. The trial judge set a sentencing hearing for April 22, 1983, but this hearing was delayed until March 16, 1984, at which time the trial court adjudged the appellant guilty of robbery in the first degree and sentenced him to thirty-five years in the penitentiary. The record shows that at the time of trial the appellant was serving a term in the State penitentiary for another crime, and that prior to the *Page 170 
initial sentencing date set by the court, he was given an early release by the prison authorities. He could not be found and brought to court for sentencing until March 16, 1984. This accounts for the delay in sentencing. From the judgment of conviction this appeal followed.
The record discloses that on October 13, 1982, two black males armed with pistols, wearing stocking facemasks and traveling in a stolen automobile, pulled up to three bank tellers and a security guard in a shopping center in Mobile, Alabama. The bank personnel were employees of the Commercial Guaranty Bank of Mobile. The masked bandits robbed them of a bank bag containing bank supplies, having the approximate value of $8.00, and a .38-caliber pistol. The tellers and the guard were unable to identify the robbers. After taking the pistol and the bank bag, the robbers jumped back into their vehicle, sped across the shopping center, and after colliding with a parked vehicle, pulled up to another stolen vehicle, where they changed vehicles, leaving the first vehicle and speeding away in the second. Prior to changing vehicles the robbers had removed their masks, and during the vehicle exchange were observed by three witnesses. The witnesses were Leonard Rigsby, James Ian McIlwain, and James Green. The witnesses observed that the robber who drove the getaway car had a pistol in his hand which he pointed at them. Shortly after the robbery the three witnesses were shown a photographic array or lineup by Detective Wayne Farmer of the Mobile Police Department and each of the witnesses picked the same photograph from the array and identified it as being the photograph of the driver of the getaway car during the robbery. This photograph had been taken by Detective Farmer shortly after the robbery and was a photograph of the appellant, Freddie Lee Bell. At the time the photograph was taken, appellant had long red-tinted hair, a goatee, and a mustache. At the time of trial he had cut his long hair and removed his goatee and mustache, thus altering his appearance to that extent.
Witness Leonard Rigsby testified on direct examination: "Do you see the man that you saw point that gun at you that day anywhere in this courtroom?" His answer was: "No, sir." Mr. Rigsby, further testified on direct examination that shortly after the robbery he was shown the photographic lineup or array by Detective Farmer, and he picked out a photograph and identified it as a photograph of the driver of the getaway car and the person who pointed a gun at him. He was shown the photographic array on the witness stand at trial and promptly picked the photograph which he had previously selected, and again identified it as a photograph of the driver of the getaway car. It was marked with an "X" to identify it and distinguish it from the other photographs. No objection was made by appellant to this testimony. The prosecuting attorney did not question the witness further concerning his inability to make an in-court identification, and the defense counsel did not cross-examine the witness in that regard.
The State called Detective Farmer, who testified that shortly after the robbery he showed Mr. Rigsby a spread of photographs. He identified the photographic spread which he had shown Rigsby. It was the same spread that Rigsby had just identified in his testimony. No objection was made to this testimony by appellant. The prosecuting attorney then asked Detective Farmer if witness Rigsby had picked one of the photographs out of the line-up prior to trial. Appellant objected to this question, and the trial judge sustained the objection. Detective Farmer was asked if the appellant's photograph was in the group or spread, and over the objection of appellant, he answered in the affirmative. He was then asked to identify the appellant's photograph in the spread, and over the objection of appellant, he identified a photograph from the group as being that of the appellant. It was the same photograph which Mr. Rigsby had just identified in his testimony from the witness stand as the photograph of the driver of the getaway car in the robbery, and was the photograph which had been marked with an "X" *Page 171 
for identification. Farmer further testified that he was personally acquainted with the appellant and that it was he who took the photograph of the appellant and that he took it three days after the robbery. He testified that appellant's physical appearance had changed between the time the photograph was taken and the date of trial. He stated that since the photograph was taken, appellant had shortened the hair on his head and removed his facial hair. The photograph was admitted into evidence over the objection of appellant. The substance of appellant's objections to the testimony of Detective Farmer and to the admission of the photograph was that it constituted impeachment by the State of its own witness or amounted to rehabilitation of its witness when there had been no attempt by appellant to impeach such witness.
The appellant raises only one issue on appeal, and states this issue in his brief as follows: "[Whether the] trial court erred in allowing the State to use an out-of-court identification as substantive evidence of guilt, when the eye-witness did not identify the defendant at trial." The State presents the issue somewhat differently, and states it as follows: "Whether the trial court properly allowed into evidence the testimony of Detective Sergeant Farmer identifying defendant from a series of photographs?"
Although one may not generally impeach his own witness, where a party is put to a disadvantage by unexpected answers, a party may, for purposes of showing surprise or for refreshing the witness's recollection, ask his witness if he had not made prior statements contrary to his instant testimony. This is permissible, after proper predicate, even though its incidental effect is to impeach the witness's testimony. Miller v. State,431 So.2d 586 (Ala.Crim.App. 1983); Isbell v. State,329 So.2d 133 (Ala.Crim.App.), cert. denied, 295 Ala. 407, 329 So.2d 140
(1976); Edwards v. State, 51 Ala. App. 433, 286 So.2d 308
(Ala.Cr.App.), cert. denied, 291 Ala. 777, 286 So.2d 313
(1973), C. Gamble, McElroy's Alabama Evidence § 165.01 (7) (3d ed. 1977). Under the theory of surprise, the prosecution may elicit from a witness testimony that he in fact made prior contradictory statements, and through questioning may further elicit from the witness the contents of prior statements through questioning. However, if the witness denies having made the prior inconsistent statements, the prosecution would not be allowed to bring in other parties to prove the contents of the prior inconsistent statements. Wyllie v. State, 445 So.2d 958
(Ala.Crim.App. 1983), cert. denied, 445 So.2d 958 (Ala. 1984);Isbell v. State, supra; C. Gamble, McElroy's Alabama Evidence § 165.01 (7)(8) (3d ed. 1977). While one's own witness may be impeached by the use of prior contradictory statements, such statements should not be treated as original evidence of the facts of the case, nor be received for any other purpose than that of contradicting or impeaching the witness. Isbell v.State, supra; Cloud v. Moon, 290 Ala. 33, 273 So.2d 196 (1973).Lewis v. State, 44 Ala. App. 319, 208 So.2d 228 (1968); Skinnerv. State, 36 Ala. App. 434, 60 So.2d 363, cert. denied, 258 Ala. 713, 60 So.2d 367 (1952).
In the instant case, it is reasonable to assume that the prosecution was surprised by witness Rigsby's testimony that he could not make an in-court identification of the appellant. He had picked out the appellant in a photographic line-up prior to trial. The prosecution certainly was put to a disadvantage to the same extent by the unexpected testimony of the witness. Under these circumstances the prosecution would have been entitled to ask the witness about his prior identification of the appellant upon laying the proper predicate. However, the prosecution did not follow this course. When Rigsby was unable to make an in-court identification of appellant, the prosecuting attorney, without attempting to lay a predicate for the purpose of showing a prior inconsistent statement, continued questioning Rigsby and elicited from him, without objection of appellant, the details concerning his extrajudicial *Page 172 
identification of the robber which he had made at the photographic line-up. Rigsby identified the photographs which he had been shown in the pre-trial photographic spread and identified the photograph of the person he saw fleeing the scene of the robbery, which he marked with an "X" for identification. This testimony does not constitute impeachment of witness Rigsby, as claimed by appellant. The appellant did not cross-examine Rigsby in reference to his testimony concerning the photographic line-up. The appellant made no objection to the admission of witness Rigsby's testimony concerning the photographic line-up and extrajudicial identification, and was apparently willing for it to come into evidence.
The defendant may not raise an objection to evidence for the first time on appeal, which was not raised at trial. Brown v.State, 392 So.2d 1248 (Ala.Crim.App. 1980), cert. denied,392 So.2d 1266 (Ala. 1981); Ala. Digest, Criminal Law, Key No. 1036.1; C. Gamble, McElroy's Alabama Evidence, § 426.01 (1) (3d ed. 1977). Absent an objection and an adverse ruling nothing is presented to this court for review. Review on appeal applies only to rulings of the trial court. Allred v. State,390 So.2d 1109 (Ala.Crim.App.), cert. denied, 390 So.2d 1114 (Ala. 1980);Cooper v. State, 331 So.2d 752 (Ala.Crim.App.), cert. denied,331 So.2d 759 (Ala. 1976).
 "To preserve error there must be a timely and appropriate objection prior to the witness's answer to a question or a motion to exclude. Ayers v. State, 48 Ala. App. 743, 267 So.2d 533 (1972). Ordinarily, a witness's testimony becomes legal evidence if it is received without objection. Wilson v. State, 52 Ala. App. 680, 296 So.2d 774, cert. denied, 292 Ala. 759, 296 So.2d 778, cert. denied, 419 U.S. 845, 95 S.Ct. 79, 42 L.Ed.2d 73 (1974). Hearsay evidence which is admitted without objection becomes lawful evidence. Wilder v. State, 52 Ala. App. 157, 290 So.2d 225 (1974). `The fact that evidence which is introduced in a case may be, if objected to, incompetent evidence under some one or more exclusionary rules of evidence does not destroy its probative effect, if it is admitted without objection.' Smith v. State, 40 Ala. App. 600, 119 So.2d 202, cert. denied, 270 Ala. 741, 119 So.2d 203
(1960)."
Watson v. State, 398 So.2d 320 (Ala.Crim.App. 1980), cert. denied, 398 So.2d 332 (Ala. 1981).
Since no objection was made by appellant to the testimony of witness Rigsby concerning the photographic line-up and his extrajudicial identification of the robber, there is nothing before us for review in this regard, and we believe that any available objection which appellant may have had to this testimony was waived. This testimony was therefore before the jury for its consideration.
Appellant argues that the trial court erroneously allowed Detective Farmer to testify about Rigsby's extrajudicial identification. The record does not support the appellant's contention that Farmer so testified. The trial court carefully prevented Farmer from testifying about Rigsby's out-of-court identification, and sustained all of appellant's objections to such testimony. As we have heretofore stated, all of the testimony regarding the extrajudicial identification came from Rigsby without objection by appellant. Farmer testified that he showed an array of photographs to Rigsby shortly after the robbery, and he identified the photographs which made up the array. They were the same photographs previously identified from the witness stand by Rigsby. No objection was made by appellant to this testimony. Farmer then, over the objection of appellant, testified that the appellant's photograph was in the array, and that he knew this of his own personal knowledge, as he was personally acquainted with the appellant and, in fact, had taken the photograph himself. At that point, over the objection of appellant, Farmer picked a photograph from the array and positively identified it as being that of the appellant. The photograph he picked was the photograph marked with an "X", which Rigsby had previously testified *Page 173 
about and identified as a photograph of the person he observed driving the getaway car at the time of the robbery.
Evidence by a third party of an extrajudicial identification is admissible in rebuttal of testimony tending to impeach or discredit the identifying witness, or to rebut a charge, imputation, or inference of falsity. Thomas v. State461 So.2d 16 (Ala. 1984); Seals v. State, 282 Ala. 586, 213 So.2d 645
(1968); Aaron v. State, 273 Ala. 337, 139 So.2d 309 (1961) This rule has no application in the instant case, as no attempt was made by appellant to impeach or discredit the witness, Rigsby, and Farmer was not permitted to testify about Rigsby's extrajudicial identification, as alleged by appellant.
A party is not precluded by his witness's unexpectedly adverse or hostile testimony from proving by some other witness that the facts in issue were otherwise than as stated by him, even though such evidence directly contradicts and, hence, incidentally discredits the witness first called by him.General Tel. Co. of Ala. v. Cornish, 291 Ala. 293,280 So.2d 541 (1973); Southern Ry. Co. v. Parks, 10 Ala. App. 318,65 So. 202 (1914); 3A Wigmore, Evidence § 907 (Chadbourn rev. 1979); 1Wharton's Criminal Evidence § 483 (C. Torcia 13th ed. 1972). InSouthern Ry. Co. v. Parks, supra, the Alabama Supreme Court stated the following:
 "A party has the right to contradict his own witness by independent evidence showing the facts to be different from those testified to by such witness, although the incidental effect of the introduction of such evidence is to materially discredit the witness, but a party cannot contradict his own witness where the only effect of the contradiction is to impeach the witness, and not give any material evidence upon any issue in the case."
See also, Williams v. Schaeffer, 262 Ala. 636, 80 So.2d 722
(1955).
A party may always correct or contradict the testimony of his own witness, regardless of the restrictions or limitations as to his impeachment of such witness, and such contradiction may be made without a foundation therefor or a showing of surprise. 1 Underhill's Criminal Evidence § 231 (Herrick rev. 5th ed. 1956). The testimony of one witness contradicting another is not an impeachment of the witness so contradicted. Stockard v.State, 391 So.2d 1049 (Ala.Crim.App. 1979), reversed on other grounds, 391 So.2d 1060 (Ala. 1980), affirmed on remand,391 So.2d 1065 (Ala.Crim.App. 1980); Walters v. State, 19 Ala. App. 92,95 So. 207 (1923).
The identification by Detective Farmer of the photograph of appellant tends to contradict Rigsby's statement that he could not identify the appellant in the courtroom. On the other hand, it tends to support and corroborate the testimony of Rigsby in that Rigsby's identification of the photograph as that of the robber is in fact an identification of the photograph of the appellant at the time of the robbery. The testimony of Farmer concerning the identification of the photograph of appellant was independent and relevant evidence on the important issue of identification, and was obviously not offered to impeach Rigsby, but to explain, correct, and contradict the possible adverse implications of Rigsby's failure to make an in-court identification of appellant. The State had the right to present the testimony as it did, and its admission was proper.
The witness, Rigsby, made a positive identification of the photograph soon after the robbery, when the robber's image was still fresh in his mind. He made a positive in-court identification of the same photograph. His inability to make an in-court identification of the appellant as the robber was obviously due to the alteration of appellant's appearance between the time of the incident and the trial. The detective's identification of the photograph was based on his first-hand knowledge, and his testimony was relevant to aid the jury in determining if the person whose picture had been identified as that of the robber was *Page 174 
the same person who sat in the courtroom as the defendant.
Witnesses James Ian McIlwain and James Green testified at trial, without objection, that they picked a photograph from the pre-trial photographic array and identified it as a photograph of the driver of the getaway car. The photograph they picked from the array was the photograph of the appellant which had been taken by Detective Farmer, and it was the same one identified by Rigsby at the pre-trial line-up and at trial. They also, without objection, identified the same photograph from the array of photographs shown to them while on the witness stand. In addition, they made a positive in-court identification of the appellant as the driver of the getaway car and the person who pointed a gun at them. It is clear from their testimony that their in-court identification was based upon their observations of the appellant at the scene of the robbery. It is equally clear that their in-court identification was not influenced or tainted by the photographic identification.
To summarize, there were three eye-witnesses involved in the identification of appellant. Two of the witnesses independently identified the appellant in court and related their prior identification as well. The third witness independently identified a photograph of the robber at trial, and related his prior identification as well. The photograph picked by the third witness at trial, and before, was the same photograph picked by the other witnesses and was a photograph of the appellant. The detective verifies that the photograph is that of the appellant. In this situation each witness's identifications, both at trial and before, corroborate the other witnesses's identifications. The witnesses constitute three independent sources of identification, each reaching the same conclusion, with one exception. That exception being that the third witness failed to make an in-court identification, which is understandable in view of the appellant's changed appearance. Great weight must be given to this collective testimony. The failure of the third witness to make an in-court identification was a fact for the jury to consider along with all the other evidence of identification.
Assuming, arguendo, that the testimony of Detective Farmer concerning the photograph of the appellant was inadmissible at the time it was offered, it was rendered prejudicially innocuous by subsequent legal testimony. The rule is that testimony apparently illegal upon admission may be rendered prejudicially innocuous by subsequent or prior legal testimony to the same effect or from which the same facts can be inferred. Yelton v. State, 294 Ala. 340, 317 So.2d 331 (1974);Holm v. State, 416 So.2d 782 (Ala.Crim.App. 1982). Witnesses McIlwain and Green, without objection from the appellant, identified the same photograph previously identified by Farmer as a photograph of the robber. If Farmer's testimony was inadmissible when presented, the later testimony of McIlwain and Green to the same effect, and admitted without objection, rendered Farmer's testimony prejudicially innocuous.
It is also the rule that the admission of evidence though it be incompetent, if it be of undisputed facts, is harmless.Yelton v. State, supra. And, the defendant cannot complain of the admission of improper evidence where he himself testified to the same facts. Coplon v. State, 15 Ala. App. 331, 73 So. 225
(1916); Yelton v. State, supra. The record fails to disclose that appellant disputed the testimony that the photograph marked "X" was a photograph of him. In fact, the record indicates that appellant admitted on cross-examination that he was the subject in the photograph. On page R-101 of the transcript, the prosecuting attorney asked appellant the following question: "Now, that is what you looked like back then, is it not (indicating)?" Appellant's answer was, "Yes, sir." It is obvious that the prosecuting attorney was referring to the photograph in controversy, and it is equally obvious that appellant admitted that it was a photograph of him. *Page 175 
At trial, the case against the appellant was strong and convincing. His defense was alibi. In addition to the eyewitnesses who made positive in-court identifications of the appellant as one of the robbers, there was additional evidence presented by the State. The appellant attempted to sell a pistol to his employer several days after the robbery. He told his employer that the pistol was "hot" and might be the one used in the bank robbery. He did tell his employer that he did not participate in the robbery. He claimed that a person named "Gyro" had had the gun. The police and F.B.I. agents could not locate such a person and appellant's efforts to assist them in locating "Gyro" seemed less than wholehearted. One of the automobiles used in the robbery was stolen from the street in front of the house where appellant and others lived. The testimony of the appellant, as well as that of his brother, who attempted to support his alibi defense, was, to say the least, unpersuasive.
For the reasons stated we find that the trial court was not in error in admitting the testimony of witness Rigsby as to his extrajudicial identification. Likewise, we find no error in the trial court's admitting the testimony of Detective Farmer as to his identification of the photograph as that of appellant.
We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none.
The judgment of conviction is due to be, and is hereby, affirmed.
AFFIRMED.
All Judges concur.