Albert Alvin Cano was indicted for trafficking in cocaine in violation of § 20-2-80, Code of Alabama 1975. The jury found the appellant "guilty as charged in the indictment." The appellant was sentenced to 21 years' imprisonment with a 15-year minimum mandatory sentence and fined $250,000.
James G. Ward, an investigator with the narcotics unit of the Alabama Bureau of Investigation, testified that he was involved in undercover narcotics operations in Dothan, Alabama, in December of 1980 and January of 1981. On December 30, 1980, Ward received information from an informant, Will Johns, that he was to meet James Talmadge Farrell on January 2, 1981 at the Ramada Inn in Dothan. On that day at approximately 12:40 p.m., Investigator Bill Rhegness and Johns went to Room 160 at the Ramada Inn and met with Farrell and Mauricio Noguera.
Several officers with local law enforcement agencies were in Room 161 monitoring the conversations in Room 160. Ward told Farrell he wanted to purchase four kilos of cocaine and a price of $220,000 was agreed upon. Ward showed Farrell and Noguera $50,000 and told them the rest of the money was in another room and it would be delivered when the deal was completed. Farrell and Noguera told Ward and Rhegness that they had to go to Tallahassee, Florida to pick up the drugs and they would return as soon as possible.
At 5:10 p.m., Farrell returned to Room 160 accompanied by the appellant. Noguera was not with them. The appellant produced a plastic bag with approximately seven grams of a white powdery substance. Rhegness tested the substance and the test *Page 726 
was positive for cocaine. The appellant stated he had brought the cocaine from Miami, Florida, but that he only had two kilos. A price of $110,000 was negotiated for the two kilos of cocaine. The appellant then asked Ward or Rhegness to accompany him to his car to get the rest of the cocaine. When Ward replied that he and Rhegness were not leaving, the appellant left the room and returned with a shopping bag. The appellant dumped two kilos of cocaine from the shopping bag onto the bed. One of the kilos was checked for cocaine by Rhegness and the test was positive. Farrell and the appellant were then placed under arrest. Noguera was arrested at a phone booth in front of the Ramada Inn.
Joseph Saloom, a criminalist with the Department of Forensic Sciences, testified that he received three bags containing a white substance from Rhegness. This substance was determined to be cocaine. The total weight of the cocaine was 4.37 pounds or 1984.76 grams.
The appellant testified that he was living in Miami, Florida in December of 1980. On Christmas Eve, he met Noguera for the first time at a party. The appellant understood Noguera was a student living in Tallahassee.
On January 1, 1981, the appellant's brother, whom the appellant knew was a drug dealer, asked the appellant to drive a rented car containing cocaine to Tallahassee to meet Noguera. The appellant was to receive $1,500 for the trip.
On January 2, 1981, the appellant left Miami and arrived in Tallahassee at around 4:00 p.m. When the appellant arrived at Noguera's apartment, Noguera made a phone call. Farrell came to the apartment a few minutes later. Noguera told the appellant they had to go somewhere and for him to come along. The appellant rode with Farrell in his car and Noguera followed in the rented car. Once they arrived at the Ramada Inn in Dothan, Noguera told him to go with Farrell and show a sample of the cocaine to Ward and Rhegness.
The appellant broke open a package of the cocaine that he had brought and removed seven grams. When the appellant showed Ward the seven grams of cocaine, Ward started asking about four kilos of cocaine. The appellant replied that he was tired and that he only had two kilos. When Ward agreed to accept the two kilos, the appellant went outside to get the bag which contained the rest of the cocaine and gave it to Ward and Rhegness. The appellant was to receive $100,000 for the cocaine from Farrell to give to his brother in Miami, Florida.
 I (A)
The appellant contends his case should have been dismissed by the trial court because the cocaine was destroyed prior to trial without his knowledge or consent.
At trial, Investigator Ward testified that he received a card from Joseph Saloom asking if the cocaine in this case should be maintained or destroyed. Ward replied to Saloom that it should be destroyed. Ward testified that the street value of this cocaine was $1,000,000.
Saloom testified that the cocaine was destroyed in 1982 after he received permission from Ward. He stated that the policy of the Department of Forensic Sciences was to maintain evidence for a period of two years unless otherwise indicated. The jury heard this evidence.
In arguing his motion to dismiss prior to trial, defense counsel stated he asked the district attorney for the cocaine in the summer of 1987, a few months prior to trial. At this time, defense counsel was informed that the cocaine had been destroyed. Defense counsel indicated he wanted the cocaine so that he could weigh it and test it for the presence of cocaine.
 "The Due Process Clause of the fourteenth Amendment, as interpreted in Brady, makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence. But we think the Due Process Clause requires a different result when we deal with the failure of *Page 727 
the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant. Part of the reason for the difference in treatment is found in the observation made by the Court in [California v.] Trombetta, supra, 467 U.S., [479] at 486, 104 S.Ct., [2528] at 2532, [81 L.Ed.2d 413] that '[w]henever potentially exculpatory evidence is permanently lost, courts face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed.' Part of it stems from our unwillingness to read the 'fundamental fairness' requirement of the Due Process Clause, see Lisenba v. California, 314 U.S. 219, 236, 62 S.Ct. 280, 289, 86 L.Ed. 166 (1941), as imposing on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution. We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, i.e., those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant. We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Arizona v. Youngblood, ___ U.S. ___, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988).
The appellant contends that Investigator Ward's intentional destruction of the cocaine, within the two-year time period that DFS usually maintains evidence, was an indication of a bad faith motive by Ward. We disagree.
It appears from the record that the cocaine was destroyed due to its $1,000,000 street value. This court is of the opinion that this was a valid reason for the destruction of the cocaine and we can find no evidence of any bad faith motive on the part of the police or the prosecution in this case involving the destruction of the cocaine at issue.
Moreover, the record indicates that the appellant jumped bail and fled the State shortly after his arrest in 1981 and he was not returned to this State until 1987. The cocaine was destroyed during the time when the police did not know where to locate the appellant. Although trial counsel represented the appellant in 1981, he did not request a sample of the cocaine until he contacted the district attorney in 1987.
Even if the cocaine had been maintained for a two-year period according to DFS procedure, the cocaine would have been routinely destroyed long before the 1987 date of his motion.
Furthermore, we note that the chances are very slim that the cocaine in this case was exculpatory to the appellant, particularly in light of his testimony at trial. The appellant admitted the substance he gave to Ward and Rhegness was cocaine and he referred to the amount of the cocaine as two kilos. There was also evidence that Rhegness tested the substance in the Ramada Inn room and it tested positive for cocaine.
Thus, we find the trial court correctly denied the appellant's motion to dismiss.
 B
The appellant also contends that Ward's and Rhegness's testimonies concerning their conversation with the appellant in the motel room should not have been admitted into evidence because a tape recording of that conversation had been lost prior to trial. The appellant claims that the unavailability of the tape recording violates the principles set out in Brady v.Maryland, 373 U.S. 83, 87 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
 " 'Essential to a claim under Brady is a showing that (1) the government suppressed or withheld requested evidence that was both (2) favorable and (3) material to the defense. Moore v. Illinois, *Page 728 408 U.S. 786, 794-95, 92 S.Ct. 2562, 2568-69, 33 L.Ed.2d 706 (1972).' United States v. Walker, 720 F.2d 1527 (11th Cir. 1983), cert. denied, 465 U.S. 1108, 104 S.Ct. 1614, 80 L.Ed.2d 143 (1984).
". . . .
 " '[T]he standard of materiality is whether the suppressed evidence might have affected the outcome of the trial. [United States v.] Agurs, 427 U.S. [97] at 104-06 [96 S.Ct. 2392 at 2397-98, 49 L.Ed.2d 342 (1976)]; United States v. Blasco, 702 F.2d 1315, 1327 (11th cir. 1983).' Walker, supra at 1535. (Footnote omitted.)"
Crawford v. State, 485 So.2d 391, 396 (Ala.Cr.App. 1986).
At trial, the appellant, as well as Ward and Rhegness, was allowed to testify about the conversation which took place in the motel room. There were very few differences between the investigators' versions of the conversation and the appellant's version and such differences were insignificant. The jury was able to hear all of this evidence, and thus, we find that the loss of the tape recording did not affect the outcome of this appellant's trial. See Crawford.
Furthermore, these tapes were lost during the six year period when the appellant had voluntarily absented himself from this State. He was responsible for the length of time between his arrest and trial, during which these tapes were lost.
 II
The appellant contends the trial court erred by denying his oral request for an instruction to the jury on possession of cocaine as a lesser included offense. In Ex parte Kerr,474 So.2d 145 (Ala. 1985), the Alabama Supreme Court held that,
 "Conduct proscribed by § 20-2-70 [possession] is clearly a lesser offense included in the criminal conduct addressed in § 20-2-80 [trafficking]; and a jury instruction to that effect is required, where requested, if any reasonable theory of the evidence supports a finding of the lesser offense."
Kerr, 474 So.2d at 147.
In Kerr, the defendant was stopped in his car by a police officer. The officer found an open pouch of marijuana on the front seat next to the defendant. The officer also found a large quantity of marijuana in a duffel bag in the trunk of the defendant's car. The defendant in Kerr admitted possession of the marijuana found on the front seat (the quantity of which was less than the amount required for trafficking) but denied any knowledge of the marijuana found in the trunk (the quantity of which was greater than the amount required for trafficking).
The Supreme Court held that a charge on the lesser included offense of possession of marijuana should have been given inKerr because
 ". . . [i]f the instant jury had believed the accused's defense theory — that he possessed the quantity of marijuana found beside him on the car seat and that he had no knowledge of the contents of the duffel bag in the trunk — it would have been justified in returning a verdict of guilty pursuant to § 20-2-70. Here, the evidence would support a finding under either § 20-2-70 or § 20-2-80."
Kerr, 474 So.2d at 146.
The facts of this case are easily distinguished from those inKerr. In Kerr, the defendant admitted possession of the small quantity of marijuana but denied knowledge of the larger quantity. Here, the appellant admitted he possessed and delivered both the small quantity of cocaine (the seven gram sample) and the larger quantity of cocaine (the two kilos).
The appellant seems to argue that an instruction on possession of cocaine should have been given because he did not intend to "traffick" in the two kilos of cocaine. He asserts that he was merely delivering the cocaine for Noguera due to a "last minute request." This argument is meritless.
"Any person who knowingly sells, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive *Page 729 
possession of, 28 grams or more of cocaine . . . is guilty of . . . 'trafficking in cocaine.' " Ala. Code, § 20-2-80(2) (1975).
The appellant admitted being in actual possession of the seven gram sample of cocaine and the two kilos (more than 1900 grams) of cocaine. There is absolutely no evidence to the contrary.
"A defendant who is accused of the greater offense is entitled to have the court charge on the lesser offenses included in the indictment, if there is any reasonable theory from the evidence, which would support the position."Kerr, 474 So.2d at 146 (quoting Fulgham v. State, 291 Ala. 71,277 So.2d 886 (1973)).
There is no evidence in the record that the appellant knowingly possessed the smaller quantity of cocaine but not the larger amount. Thus, there was no rational basis for a charge on the lesser included offense of possession of cocaine. The trial judge correctly denied the request for this charge.
 III
The appellant contends reversible error occurred in this case because "the prosecution was permitted to adduce evidence that Cano was an illegal alien (R. 255-256), that his family was involved in cocaine trafficking in Columbia (R. 293) and that he was a fugitive from justice." Appellant's brief, p. 16.
During the prosecutor's cross-examination of the appellant, the following occurred:
"Q Mr. Cano, how long were you in Miami?
"A When was that?
 "Q From the time — from January 1, 1981, going back.
 "A Well, I arrived in that particular year — I arrived more or less in September, 19 — August, September, 1980.
 "Q Were you admitted to the country legally at that time, Mr. Cano? You were not, were you?
"A Well, if you let me explain.
"Q No, sir, just answer my questions.
 "MR. SALTER: Objection, may it please the Court. This goes to other matters indicating other criminal conduct not charged in the indictment. I think the defendant ought to be allowed to explain because being in this country legally and illegally is —
 "THE COURT: Allow him to explain, Mr. Valeska." (R. 255-56)
This court can only review matters on which rulings have been invoked at the trial court level. Moore v. State, 457 So.2d 981
(Ala.Cr.App. 1984).
Here, the appellant did not receive or ask for an adverse ruling. In fact, the trial judge did precisely what defense counsel asked — i.e., he allowed the appellant to explain his answer. Furthermore, evidence of this same character was admitted without objection at other points in the trial. (See
R. 99,289, 304.)
The following portion of the transcript also occurred during the cross-examination of the appellant.
"Q What happened to Cesar?
"A Cesar die in 1985.
"Q Killed in Columbia; right?
"A Correct.
 "Q Over drugs, right? In a drug war, did you not testify to that earlier, Mr. Cano?
"A Well, I didn't say that it was a drug war.
"Q Did you say it was over drugs, Mr. Cano?
 "A It was not really over drugs. It was that somebody stole something from him and they just killed him." (R. 290-91)
Defense counsel did not object to the prosecutor's question, and, thus, this issue is not preserved for our review. Bell v.State, 466 So.2d 167 (Ala.Cr.App. 1985).
Furthermore, we fail to see how the appellant was harmed by the prosecutor's question because the appellant had already admitted that his brother was a drug dealer (R. 271), and he replied in the negative to the prosecutor's question. *Page 730 
The appellant's assertion that the trial court erred by admitting evidence that the appellant was a fugitive from justice is not before this court for review. The appellant never objected to the admission of this evidence, and, thus, this issue has not been properly preserved for appellate review. Bell.
 IV
On July 19, 1988, the appellant filed with this court a "Motion for Remand to the Circuit Court for an Evidentiary Hearing." In his motion, the appellant alleged the following:
 "2. Appellant submits that a critical issue in this appeal will be the propriety of certain remarks made by the prosecutor during the State's opening and closing arguments.
 "3. During arguments, the District Attorney referred to Appellant as a 'merchant of death' and that Appellant was responsible for the 'killing of children.' (Other improper remarks were also made.) At least some of these prejudicial comments were objected to by Appellant's counsel. Attached hereto as Exhibit 'A' are the excerpts from the trial transcript reflecting the opening and closing arguments." (Emphasis added.)
On July 20, 1988, the appellant's motion was denied by this court. On appeal, the appellant urges this court to reconsider its denial of the "Motion to Remand to the Circuit Court for an Evidentiary Hearing." This issue is without merit and it is unnecessary to remand this case for an evidentiary hearing.
Rule 21(b), A.R.Crim.P.Temp. provides that "In all non-capital cases, the court reporter shall take full stenographic notes of the arguments of counsel if directed todo so by the judge." (Emphasis added.) If the judge does not direct the court reporter to take notes of the arguments of counsel, as here, then,
 "The official court reporter shall attend in person, except as otherwise herein provided, the sessions of court held in the circuit for which he is appointed, and in every case, where directed by the judge or requested by a party thereto, he shall take full stenographic notes of the oral testimony and proceeding, except argument of counsel, and note the order in which all documentary evidence is introduced, all objections of counsel, the rulings of the court thereon and exceptions taken or reserved thereto."
Ala. Code, § 12-17-275 (1975) (emphasis added).
 " 'The official court reporter is not required to transcribe the argument of counsel except where objection is made. McClary v. State, 291 Ala. 481, 282 So.2d 384 (1973); Langford v. State, 354 So.2d 297 (Ala.Cr.App. 1977), rev'd on other grounds, 354 So.2d 313 (Ala. 1977); Ala. Code § 12-17-275 (1975).' Ervin v. State, 399 So.2d 894, 898
(Ala.Cr.App. 1981), cert. denied, 399 So.2d 899
(Ala. 1981). Any remarks made by the prosecutor which the appellant considers objectionable should be fully quoted, or substantially so, by objection. Id.
 " 'It is incumbent upon counsel, where he makes objection to the closing argument, to specifically state and present to the attention of the trial court by proper objection such argument and the court's ruling thereon in order that the court reporter be able to transcribe same and include this in the record on appeal. . . . Moreover, where, as here, the appellant is not an indigent, it is incumbent upon counsel, if he desires the complete closing argument transcribed, to bring in a court reporter and have same done, or to pay the reporter for transcribing the complete closing argument.' "
 "Briggs v. State, 375 So.2d 530, 535
(Ala.Cr.App. 1979)."
Reeves v. State, 518 So.2d 168, 171 (Ala.Cr.App. 1987).
The few objections made by counsel during argument were fragmentary in nature. The record does not contain any of the comments allegedly made by the prosecutor which the appellant asserts were improper. "It is the duty of counsel urging error in closing [or opening] argument to *Page 731 
be certain that the full language, deemed objectionable, is set forth so that the propriety of same is preserved in the record." Ragsdale v. State, 448 So.2d 442 (Ala.Cr.App. 1984) (citations omitted). The appellant failed to do this, and thus, there is nothing before this court to review.
 V
The appellant, in his supplemental brief to this court, contends that his sentence was disproportionate to the sentence received by his co-defendant, Farrell.
The appellant received a 21-year sentence in this case. Farrell pleaded guilty to possession of cocaine and received a 10-year sentence.
This court, in a similar fact situation, has previously addressed and adversely decided this issue to this appellant.See Maddox v. State, 502 So.2d 790 (Ala.Cr.App. 1986), cert. denied, 502 So.2d 794 (Ala. 1987). Applying the legal principles we set out in Maddox to the facts of this case, we find that the appellant's sentence was not disproportionate.
For the reasons shown, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
All Judges concur. *Page 1171